WESTERN LAND CORPORATION *et al.*, Plaintiffs-Appellants, *v.* GERALD LICHTENSTEIN *et al.*, Individually and d/b/a Faribo Plaza, Defendants-Appellees.

First District (2nd Division)    No. 61488

Opinion filed March 15, 1977.

Francis B. Stine, of Chicago, for appellants.

Kirkland & Ellis, of Chicago (John P. Lynch, of counsel), for appellees.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Plaintiff, Western Land Corporation, a Delaware corporation (Western Land), was the owner of Faribo Plaza Shopping Center in Farribault, Minnesota. Harold and Fay Stickler are shareholders in Western Land and were added as plaintiffs in October 1973. A contract dated October 31, 1967, was entered into between Western Land and Gerald and Harriet

Lichtenstein which provided for the sale of Faribo Plaza to the defendants Gerald and Harriet Lichtenstein, and a lease back to Western Land. Though the contract bears the date stated, the actual date of the signing is subject to some dispute. On May 11, 1971, Western Land filed a suit seeking recision of the contract and other relief alleging generally that Western Land lacked authority to sell property under section 271 of the Delaware Corporation Act (Del. Code Ann. tit. 8, § 271 (1967)) without shareholder approval and also charged the defendants with actual fraud, inadequacy of consideration tantamount to fraud, and conspiracy. Two other issues are raised and will be considered later in the opinion.

Western Land is a publicly held corporation with over 1000 shareholders. At the time of the contract its corporate headquarters were in Minnesota. Incorporated in Delaware in 1960, Western Land described its business purposes in its certificate of incorporation:

> "The nature of the business, or objects or purposes to be transacted, promoted or carried on are: To purchase, option, acquire, hold, improve, subdivide, sell, convey, assign, exchange, release, mortgage, encumber, pledge, lease, hire, and by other means to deal in real and personal property of every name and nature * * *."

Forrest Miller, then a vice-president of Western Land, was in Chicago in October 1967 and was introduced to Gerald Lichtenstein by a mutual banking acquaintance. Gerald Lichtenstein, although a licensed attorney in Illinois, has virtually never practiced law. He has been in the retail business for nearly 40 years and for several years prior to this transaction has been involved in five commercial shopping center ventures. The preliminary contractual negotiations were conducted between Miller and Gerald Lichtenstein. Edward J. Callahan, Jr., attorney for Western Land and David Hoffman, attorney for the defendants, appear a short time later in these contractual discussions. However, only Gerald Lichtenstein and Hoffman testified at trial. Neither Miller nor Callahan nor anyone from the board of directors at the time of the contract testified. Gerald Lichtenstein testified that after an initial meeting he and Miller exchanged relevant financial data. At a second meeting, Gerald Lichtenstein testified that they discussed a price of $200,000 above the existing mortgage on the property. Gerald Lichtenstein requested that Western Land consider a lease-back because the shopping center could not be conveniently managed due to its distance from Chicago. Gerald Lichtenstein further testified that Miller replied that he thought Western Land would be receptive to the suggestion of a lease-back. Gerald Lichtenstein further testified that after Miller returned to Minnesota, Miller telephoned him and informed him that Western Land had a two-acre parcel of vacant land contiguous to the shopping center, that Western Land did not want

to be left with this property and that it would be a condition of the sale that the land would be included and the purchase price would be raised to $230,000. Gerald Lichtenstein testified that he had no opportunity to negotiate this issue.

On October 25, 1967, Miller wrote to Gerald Lichtenstein setting forth what he described as the entire deal. The record does not reveal whether this letter was before or after the second meeting between Miller and Gerald Lichtenstein. Further, it does not reveal whether the letter was before or after the several more meetings they had in Chicago. The letter showed in summary that the total value of the buildings and paving was $797,121.04 and that there was a mortgage balance of $703,121.04 leaving a net equity of $94,000. In addition to paying the $94,000 the letter indicates that Gerald Lichtenstein was to pay interest over the period of the contract of $94,348.80 and a management fee of $42,000. The net income to Western Land over a six-year period was $230,348.80.

David Hoffman, attorney for Gerald Lichtenstein, testified that the contract was brought to his office in early November. He thinks the date was November 9. Certain pages of the contract were retyped and taken back to Minnesota by Miller and Callahan, the attorney for Western Land. Gerald Lichtenstein executed the contract sometime between November 9 and 10 and November 28, 1967. The date of October 31, 1967, was on the instrument when it was first submitted to David Hoffman and it was never changed. At the time prior to the signing of the contract and unspecified as to its relationship to the board of directors' meeting on November 10, 1967, the contract was changed in certain respects. What had been designated a management fee of $42,000 was changed to read "interest." The term of the lease-back was changed from 10 years to 13½ years and the rentals were increased accordingly.

Western Land had a Board of Directors' meeting on November 10, 1967. Admitted into evidence over defendants' objection were what counsel for the defendants at trial termed "records from the files" of the corporation. Those records contained the "proposed minutes" drafted by Callahan, Western Land's attorney. The proposed minutes show that the Board resolved that the offer of Gerald Lichtenstein would be accepted on the terms and conditions contained in the purchase agreement on the lease which the proposed minutes say are attached to the minutes. What is attached to the exhibit is a breakdown of the purchase which shows that the sale price would net $230,000 payable over a period of six years. It further shows that the term of the lease was to be 10 years. Also as part of that exhibit is a certificate of the secretary of Western Land, Ellsworth Johnson, which shows that the Board of Directors resolved that the company should enter into an agreement to sell both the shopping center

"with an adjoining tract of land held in fee by Western Land Corporation consisting of approximately two acres".

Section 271 of the Delaware Corporation Act (Del. Code Ann. tit. 8, § 271 (1967)) requires shareholder approval in instances where all or substantially all of the assets of the corporation are sold in other than the normal course of business. Defendants filed a motion for partial summary judgment on this issue which was allowed. Western Land appeals from that judgment. In doing so, it alleges that the sale constituted a sale of all or substantially all of Western Land's assets; the sale was not in the normal course of Western Land's business; and there were material issues of fact which would prevent a summary judgment.

■■ In urging that the trial court was in error in finding the sale was not the sale of all or substantially all of its assets Western Land examines its own financial statement of October 1967. Through various interpretations it casts doubt on its own balance sheets. It also contends that a balance sheet is inappropriate in determining the value of assets. Defendants' motion includes affidavits that show Western Land sold its equity position in other shopping centers to generate cash so that it might further develop yet other shopping centers. There were other shopping centers in progress at the time of the sale of Faribo. In a letter to the Securities & Exchange Commission on April 11, 1968, Western Land stated that it was not disposing of a substantial portion of its assets. The letter pointed out that it was in the business of developing and selling shopping centers and using the proceeds to develop still more shopping centers. It asserted that during the fiscal year of 1967 it sold two shopping centers which amounted to 40% of its gross assets and it continued to hold several shopping centers after the sale. We do not believe that Western Land may now deny its own records. The court's ruling that there was no material issue of fact on this issue was proper.

■■ We also believe that the court properly ruled that the sale was in the normal course of business. Western Land argues that although its officers said the sales were necessary to generate working capital that this was a change in corporate purpose. Western Land's purpose according to its articles of incorporation was to develop and sell property which it did here.

■■ A threshold question exists concerning the order dismissing the fraud and conspiracy counts. The motion for partial summary judgment was ruled upon and the appeal taken from the order of Judge Charles R. Barrett. Judge Barrett also heard the evidence concerning the issues of fraud and conspiracy after ruling on the motion for partial summary judgment and on November 21, 1973, entered an order dismissing the fraud and conspiracy counts. In a letter to counsel transmitting the order

Judge Barrett suggested that although he considered the order sufficient he would entertain a motion to vacate the order and enter an order containing expanded findings of fact. Western Land took advantage of the court's offer and made a motion to vacate and enter a new order continuing expanded findings of fact. On December 10, 1973, the court vacated the judgment order of November 21, 1973. The order stated that "the court shall in lieu of the order of November 21, 1973 herein vacated, enter a new order containing expanded findings of fact, with notice of the entry of said order being sent to all attorneys of record." Prior to any new order being entered, however, Judge Barrett resigned from the circuit court on January 31, 1974, and was appointed to the appellate court, first district, the following day. The defendants petitioned the court to reinstate the order of November 21, 1973, and Western Land objected. Judge L. Sheldon Brown entered an order reciting the fact that he had considered the plaintiffs' petition, answer and reply of the parties, heard oral argument and it being his opinion that expanded findings of fact were not necessary to the validity and effect of Judge Barrett's order, Judge Brown ordered that Judge Barrett's order of November 21, 1973, dismissing the cause be reinstated and reentered.

Western Land contends that Judge Brown, successor to Judge Barrett, had no authority to decide or make findings of fact in the case not tried by him. It cites as authority 48 C.J.S. *Judges* § 56(b) (1947) to the effect that where a case is tried by a judge and the issues remain undetermined by him, a successor cannot decide or make findings in the case without a trial de novo. Also cited is the case of *Wainwright v. PH&FM Roots* (1912), 176 Ind. 682, 97 N.E. 8, which Western Land asserts is parallel to the case at bar with one insignificant exception. In *Wainwright* the trial judge took the case under advisement and a couple of months later indicated that his findings would be favorable to the defendant. The judge told the clerk his findings were ready to be filed and he would file them the following day. That evening the judge died suddenly. Found in his office were the special findings of fact and the conclusions of law with his signature. We believe that the citation from Corpus Juris Secundum and the *Wainwright* case are distinguishable because in those cases judgments had not been entered. In the case at bar a judgment had been entered and was vacated merely for procedural purposes. Western Land in its motion to vacate the order of November 21, 1973, only asks that the order be vacated so that a new order containing expanded findings of fact may be entered. That motion did not challenge the order of dismissal. Special findings of fact are not necessary pursuant to Supreme Court Rule 366(b)(3)(i). (Ill. Rev. Stat. 1971, ch. 110A, par. 366(b)(3)(i).) The ruling of the court was proper.

In arguing that the dismissal of the actual fraud and inadequate

consideration tantamount to fraud counts was improper Western Land asserts that the offer did not include the vacant land valued at $30,000 and it was never discussed with the directors. The record is not clear as to what exactly was discussed at the Board of Directors' meeting because Western Land never presented as a witness Miller nor any other person who was at the directors' meeting. The only evidence presented is what has been termed "records from the files" which indicate through the certificate of the secretary of Western Land that the Board of Directors resolved that the company should enter into the agreement to sell the two-acre vacant piece of property adjoining the shopping center.

It is asserted by Western Land that the management fee of $42,000 was eliminated. Although the term management fee was deleted, the sales price of $230,000 was not changed and the transaction was recast in terms of principal and interest instead of principal, interest and management fee. These changes in no manner affected the purchase price that Western Land was to receive nor did it affect Western Land in any other way.

■■ Western Land says that the initial down payment of $50,000 which was returned to the plaintiffs through rentals over the years constituted an inadequate consideration for the shopping center and vacant property valued at $412,000. The value is based on an appraisal that Western Land received prior to the contractual negotiations. This argument cannot be sustained on any count. No inference of fraud can be drawn by opposing the down payment against the valuation Western Land asserts. Fraud must not be presumed but must be proved by such clear and convincing evidence that the mind is well satisfied the charge is true. (*Mosbarger v. Brown* (1924), 313 Ill. 238, 248, 145 N.E. 140.) Also, as to the issue of value Western Land points out in its brief value is what a willing buyer will pay a willing seller at any given moment of time. There is no indication that there has been an offer from a willing buyer at that price.

In arguing that the alleged inadequate consideration is tantamount to fraud Western Land states that of the $230,000 sales price only $50,000 is in cash and the balance is payable over a period of six years out of income. Further, that after the lease period of 13½ years the defendants will have received $62,000 in excess of the purchase price of $230,000. In the same vein it argues that Faribo will be worth at least $486,000 more, which is the amount by which the mortgage will have been reduced at that time. From all of these factors it is the contention of Western Land that it should be concluded that the transaction was fraudulent. As we stated previously fraud must be proved by clear and convincing evidence. We believe the trial court was correct in finding for the defendants and against the plaintiffs at the conclusion of the plaintiffs' case. It is expected in the purchase of income-producing property that the property will be paid for

from the income of the property. There is nothing in the figures presented by the plaintiffs which would indicate an inadequacy of consideration tantamount to fraud.

■■ Representing essentially the same facts, with few exceptions that will be noted momentarily, Western Land charged Gerald Lichtenstein with a conspiracy. Western Land argued at length that there was fraud in back-dating the documents from December 1967 to October 31, 1967. The inference of fraud according to Western Land is to be drawn from the fact that Western Land asserts that the then president of Western Land, Leslie Crews, wanted the money to relieve him of an obligation of Western Land that he personally guaranteed and that the contract was deceptively backdated. The evidence however, does not support the assertion of Western Land. David Hoffman, counsel for the plaintiffs, was the only witness to testify concerning the date of the contract and his testimony was that it was agreed that Callahan, Western Land's attorney, would prepare a draft of the purchase agreement and that when the document was first seen by Hoffman in the early part of November 1967 the date of October 31, 1967, was already on the contract. Hoffman testified that the only conversation concerning the date of the agreement was that Miller said he hoped it could be concluded prior to October 31, 1967, and that there was never any discussion whatsoever about backdating the contract. There was never any testimony, contrary to the assertion of Western Land in its brief, about agreeing to backdate the documents to that date. The other allegations concerning conspiracy have previously been treated or are too insignificant to consider further. The ruling of the court on this issue was correct.

■■ Gerald and Harriet Lichtenstein filed a counterclaim praying for an accounting against Western Land. That matter was reached for trial on October 1, 1974, before Judge Brown. A conference was held by the parties in chambers and the matter was continued until October 3 for a hearing. At that latter date, the counterplaintiffs presented a motion to dismiss without prejudice. The order was entered over objection. Section 52 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 52) provides that before trial or hearing begins the plaintiff upon notice and upon payment of costs may dismiss his action without prejudice but thereafter may dismiss on terms fixed by the court either on stipulation or on motion specifying the ground for dismissal supported by affidavit or other proof. Western Land contends that the trial began when Judge Barrett commenced hearing the case in July of 1973. It cites the case of *Galter v. Galter* (1944), 323 Ill. App. 297, 55 N.E.2d 405 (abstract). In *Galter*, however, the trial court heard evidence on both the claim and the counterclaim during the trial of the case in chief and in fact it ruled on the merits of the counterclaim finding it to be unfounded and unwarranted.

In *Central Ice Cream Co. v. Goldenrod Ice Cream Co.* (1958), 18 Ill. App. 2d 7, 9, 151 N.E.2d 466, the plaintiff sought both temporary and permanent injunctions. The court heard the plaintiff's motion for an injunction over a period of 14 days. The trial court denied the plaintiff's motion for an injunction after which the plaintiff moved to dismiss without prejudice pursuant to section 52. That motion was granted over objection. The appellate court affirmed the dismissal over the contention of the defendants that because the evidence which had been taken in the earlier hearing would be admissible at trial in the principle case the trial or proceeding had begun within the meaning of section 52. The facts in *Central Ice Cream* were stronger in favor of the defendants because in that instance there was a stipulation that the evidence taken in connection with the motion for an injunction would be considered as evidence taken on the merits of the case. The appellate court, however, said that they did not think the stipulation converted the application for an injunction to a trial hearing on the merits. In the instant case there was no testimony and issues raised on the amended counterclaim.

■■ Western Land contends that the trial began on the day the parties appeared in chambers. In *Cosmopolitan National Bank v. Goldberg* (1959), 22 Ill. App. 2d 4, 8, 159 N.E.2d 1, the appellate court rejected an identical contention that preliminary discussions about the cause of action and the nature of the defense constituted the beginning of a trial in the statutory sense of the term.

■■ Western Land also contends that notice was not given pursuant to section 52. The defendants concede that formal notice was not given but say that since the motion was filed and a hearing was scheduled two days hence the defect was cured. We believe the purposes of the notice provision were satisfied and the order was properly entered. The trial court properly dismissed the counterclaim pursuant to section 52.

The order dismissing Western Land's case found that the plaintiff by its acceptance and retention of the benefits and by its course of conduct in recognizing the defendants as owners had affirmed and ratified the contract of purchase and lease-back. The plaintiffs on appeal contest this finding. Our holdings on the other issues in this case obviate the need to consider this point.

In view of the foregoing, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

DOWNING, P. J., and STAMOS, J., concur.