PEOPLES GAS LIGHT & COKE COMPANY, Plaintiff-Appellant, v. SON-DRA A. AUSTIN, d/b/a Halsted Realty, *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 85—3031

Opinion filed August 12, 1986.

Paul M. Heller & Associates, Ltd., of Chicago (Steven D. Gertler, of counsel), for appellant.

Brunswick & Keefe, of Blue Island, for appellees.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Peoples Gas Light and Coke Company (Peoples Gas), appeals from an order granting defendants' motions for judgments on the pleadings.

According to the plaintiff, on August 9, 1972, Peoples Gas established an account in the name of Halsted Realty to supply gas service to an apartment building at 7816 South Cornell Avenue, Chicago. On October 7, 1975, the defendants formed a corporation known as Petite Cornell Apartments, Inc. Plaintiff alleges that the corporation purchased the building at 7816 South Cornell from the principals of Halsted Realty. Unaware of the change in ownership, plaintiff continued to supply gas service to the apartment building under the account of Halsted Realty. Defendants made payments for gas service on the Halsted Realty account, and on March 16, 1978, defendant Frances Stokes allegedly entered into an agreement to make past-due payments on behalf of Halsted Realty. On May 15, 1978, after the arrearage in the account had grown to $10,225.31, plaintiff terminated gas service to the apartment building.

On October 19, 1978, plaintiff filed a lawsuit against defendant Sondra Austin. Plaintiff alleged that Austin had contracted for gas service, but despite numerous demands, she refused to pay an arrearage of $10,255.31. In the alternative, plaintiff claimed that there was an account stated between the parties and that Austin was indebted to Peoples Gas for $10,225.31.

On January 16, 1979, plaintiff amended its complaint, but stated the same allegations against Sondra Austin that it had made in its first complaint. Plaintiff changed the caption, however, to add Frances Stokes as a defendant and to reflect that Austin was doing business as Halsted Realty. Plaintiff also claims that it included in its amended complaint a payment agreement executed by Frances Stokes on behalf of Halsted Realty.

Plaintiff made several unsuccessful attempts to serve Austin. Finally, Austin was served, and she filed an answer to plaintiff's first amended complaint on April 27, 1982. In her answer, Austin denied that gas service was rendered to her at her request, denied that she was indebted to plaintiff, and denied that she had guaranteed payment of any debt to plaintiff. Defendant Stokes was not served with

a summons in connection with the first amended complaint.

After Austin had answered plaintiff's complaint, she and plaintiff engaged in discovery. Plaintiff contends that as a result of Austin's testimony in a deposition, it became aware of facts that gave rise to new causes of action against defendants. Consequently, on September 1, 1983, plaintiff filed a second amended complaint against Austin and Stokes. The second amended complaint contained four counts. Count I charged that Austin and Stokes had conspired to fraudulently induce plaintiff to provide natural gas service to the property at 7816 South Cornell. Count II alleged that defendants were unjustly enriched because they received gas service for which they did not pay, and plaintiff asked the court to "pierce the veil" of limited liability enjoyed by defendants as shareholders and officers of Petite Cornell Apartments, Inc. Count III alleged that defendants had violated their nondelegable statutory duty to provide heat to their tenants. Finally, count IV alleged that there was an account stated between the parties for unpaid gas service. Plaintiff prayed for damages of $10,255.31 in each count of its complaint.

Austin filed an answer to the second amended complaint in which she denied liability. Austin admitted, however, that she had failed to notify plaintiff of the change in ownership of the apartment building at 7816 Cornell and that she had failed to object to any of the billing statements she received from plaintiff. She also conceded that if plaintiff had supplied gas service to the apartments at 7816 Cornell the owners would have been unjustly enriched.

Defendant Stokes was finally served with a summons on December 8, 1983. On January 17, 1984, she filed an answer and appearance, in which she simply denied most of plaintiff's allegations. Stokes did not object in her answer to the fact that she had not been served with a summons in connection with the first amended complaint.

In July 1985, both Austin and Stokes requested leave to file amended answers to plaintiff's second amended complaint. Defendants wished to set forth affirmative defenses based on *laches* and the statutes of limitations. On July 11, 1985, the honorable Daniel Lynch denied Stokes' request for leave to file an amended answer. Austin then withdrew her motion for leave to amend.

On July 12, 1985, Stokes filed a motion for reconsideration of Judge Lynch's order. Judge Lynch was not sitting on July 22 when the motion was scheduled for a hearing, so the motion for reconsideration was presented to the honorable Mary Hooton. Also on July 22, 1985, Austin renewed her motion for leave to file an amended

answer. Judge Hooton granted both defendants leave to amend their answers and set a hearing date for consideration of defendants' motions for judgments on the pleadings.

Judge Hooton heard defendants' motions for judgments on the pleadings on September 19, 1985. The judge granted Austin a judgment on the pleadings on counts I, II, and III of plaintiff's second amended complaint. Defendant Stokes was granted a judgment on the pleadings as to all four counts of the second amended complaint. On September 20, 1985, plaintiff voluntarily nonsuited its remaining count against defendant Austin. The judge included in her order a finding that there was no just reason to delay an appeal, so plaintiff seeks review of Judge Hooton's orders granting Stokes leave to amend her answer and granting both defendants judgments on the pleadings.

■ Plaintiff's first objection on appeal is that Judge Hooton erred in allowing defendant Stokes leave to amend her answer. Judge Hooton reversed an order by Judge Lynch in which Stokes was denied leave to amend. According to the plaintiff, one trial judge may not review the orders of another trial judge, except under unusual circumstances not present here.

Plaintiff misapprehends the law regarding the circuit court's power to review orders. Plaintiff cites *People ex rel. Kelly, Ketting, Furth, Inc. v. Epstein* (1974), 61 Ill. 2d 229, 335 N.E.2d 430, to support the contention that one circuit court judge can not review the order of another judge of the same court. The *Kelly* court held that "review of the orders of one judge by another judge of the same court in the same case is neither consistent with the orderly administration of justice nor with our judicial system." 61 Ill. 2d 229, 231, 335 N.E.2d 430.

In the *Kelly* case, the first order, which restrained the defendants from transferring certain funds, was a final judgment and could not be altered. When an order is interlocutory, however, the circuit court has power to amend it or revise it any time prior to final judgment, and it does not matter that the judge who vacates or changes an order is not the same one who entered it in the first place. (*Richichi v. City of Chicago* (1964), 49 Ill. App. 2d 320, 325, 199 N.E.2d 652.) The order in this case was interlocutory since it did not finally dispose of all of the rights and liabilities of the parties. (See 87 Ill. 2d R. 304(a); *In re Marriage of Zymali* (1981), 94 Ill. App. 3d 1145, 1148, 419 N.E.2d 487.) This being so, Judge Hooton had the power to review the judgment of her predecessor.

■ ■ The power of a circuit court judge to review the interlocu-

tory orders of his fellow judges is not without limits, but authority to amend a previous order does not always require a showing of changed circumstances as plaintiff contends. A trial judge is not bound by the order of another judge; he has a right to review the order if he believes it is erroneous, and he is obligated to do so if changed circumstances make the prior order unjust. (*Scardini v. Colletti* (1965), 63 Ill. App. 2d 481, 491, 211 N.E.2d 762; *Richichi v. City of Chicago* (1964), 49 Ill. App. 2d 320, 325, 199 N.E.2d 652.) It is true that a prior order should be vacated or amended only after careful consideration, especially if there is evidence that the party seeking reconsideration is shopping for a jurist favorable to his cause. (*Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 121, 382 N.E.2d 1217.) However, a demonstration of changed circumstances is necessary only when the efficient administration of justice would be frustrated or uncertainty in litigation promoted. See *Balciunas v. Duff* (1983), 94 Ill. 2d 176, 187, 446 N.E.2d 242; *Barliant v. Follett Corp.* (1978), 74 Ill. 2d 226, 231, 384 N.E.2d 316; *People ex rel. Beslisle v. McField* (1981), 95 Ill. App. 3d 655, 656-57, 420 N.E.2d 573.

■ In the present case, Judge Hooton's reconsideration of her predecessor's order neither delayed justice nor promoted uncertainty. The first order, denying Stokes leave to amend her answer, was entered on July 11, 1985. Defendant Stokes requested reconsideration the next day, and Judge Lynch's order was vacated only 10 days later, on July 22, 1985. Moreover, there is no evidence that Stokes was shopping for a jurist who was amenable to her position when she filed her motion for reconsideration with Judge Hooton. Stokes' case had been transferred to room 1501 because of plaintiff's request for a change in venue, and Judge Hooton happened to be the judge sitting in that courtroom. Under these circumstances, it does not seem that Judge Hooton acted improperly by reviewing Judge Lynch's order.

Plaintiff's second objection on appeal is that Judge Hooton erred in granting defendants' motions for judgments on the pleadings. Judge Hooton found that plaintiff's second amended complaint was filed beyond the period prescribed by the statutes of limitations. Plaintiff's causes of action against Stokes and Austin arose between October 1975 and May 1978, but the second amended complaint was not filed until September 1983, after the applicable statutes of limitations had expired. See Ill. Rev. Stat. 1985, ch. 26, par. 2—725; Ill. Rev. Stat. 1985, ch. 110, par. 13—205.

Plaintiff admits that all four counts of its second amended complaint appear to be time-barred. However, plaintiff contends that the

allegations in its second amended complaint "relate back" to its first amended complaint which was filed in 1979, within the applicable statutes of limitations. The trial court found that only count IV of the second amended complaint related back to 1979. According to the court, count IV, which was virtually identical to plaintiff's first amended complaint, arose from the same transaction as that set forth in the earlier pleadings. In the court's judgment, the other three counts, based upon fraud, piercing the corporate veil, and violation of a duty to provide heat, did not relate back to the first amended complaint. Consequently, three of the counts against both Stokes and Austin were dismissed as time-barred.

Plaintiff contends that all four counts of its second amended complaint arose from the same transaction as that set forth in the first amended complaint. Consequently, according to the plaintiff, section 2—616(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(b)) allows the entire second amended complaint to relate back to the first amended complaint.

■■ ■ All of the allegations in plaintiff's second amended complaint relate back to the earlier pleadings. Section 2—616(b) of the Code of Civil Procedure provides that a cause of action set up in an amended pleading shall not be barred by lapse of time under a statute of limitations if the time prescribed by the statute had not expired when the original pleadings was filed, and the cause of action asserted in the amended pleadings grew out of the same transaction or occurrence set up in the original pleadings. (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(b).) The purpose of section 2—616(b) is to prevent a person from losing a cause of action due to technicalities. (*Frankenthal v. Grand Trunk West R.R. Co.* (1983), 120 Ill. App. 3d 409, 417, 458 N.E.2d 530.) As section 2—616 has been construed, it is not necessary that the cause of action set out in an amendment be substantially the same as the one stated in the original pleading. The "relation-back" doctrine does not depend upon the subjective state of mind of the pleader; rather it depends on whether the original complaint furnished to the defendant all of the information necessary for him to prepare a defense to the claim subsequently asserted in an amended pleading. (*Krieger v. Village of Carpentersville* (1972), 8 Ill. App. 3d 243, 246, 289 N.E.2d 481.) An amended complaint relates back to the original pleading if the defendant is alerted, within the time prescribed by the statute of limitations, to the facts which form the basis of the claim lodged against him. *Zeh v. Wheeler* (1986), 111 Ill. 2d 266, 273, 489 N.E.2d 1342.

■■ In the present case, plaintiff's first amended complaint al-

leged that the defendants, doing business as Halsted Realty, contracted with the plaintiff to procure gas service and that there was an account stated between defendants and plaintiff in the amount of $10,255.31. In counts I, II, and III of the second amended complaint, plaintiff alleged that the defendants conspired to defraud Peoples Gas by causing their corporation, Petite Cornell Apartments, Inc., to purchase an apartment building while they continued to receive gas service for the building under the account of the former management, Halsted Realty. Plaintiff also alleged that the defendants' corporation was under-capitalized and that the defendants should be held personally liable for the debts of Petite Cornell Apartments. Finally, plaintiff alleged that the defendants violated their nondelegable, statutory duty to provide heat to the tenants.

The transaction set forth in plaintiff's first amended complaint was one in which Austin and Stokes failed to pay for gas service in the amount of $10,255.31. This same transaction regarding gas service gave rise to count I of the second amended complaint in which plaintiff accused defendants of fraudulently retaining a service account in the name of Halsted Realty. This transaction also gave rise to count II of the second amended complaint since the Halsted Realty account was allegedly a front for Petite Cornell Apartments. Finally, the transaction cited in the first amended complaint gave rise to count III of the second amended complaint since defendant's maintenance of an account in the name of Halsted Realty was the basis of an alleged breach of a nondelegable duty to provide heat to the tenants.

It is not clear exactly what documents comprised plaintiff's first amended complaint. Plaintiff contends that a payment agreement executed by Stokes was attached to the first amended complaint and that this agreement gave the address of the apartment building for which gas was furnished. Defendant contends that there is no proof that such an agreement was attached to the first amended complaint, and the complaint itself never gave the address of the property in question.

Regardless of what documents were included in the first amended complaint, however, this pleading alerted defendants to the facts that formed the basis of the second amended complaint. The first amended complaint apprised defendants that they were being sued for an arrearage in the Halsted Realty account. If plaintiff's allegations are true, then naming the Halsted Realty account alerted defendants to the fact that the gas service in question was actually furnished to Petite Cornell Apartments. Furthermore, knowledge

that Petite Cornell Apartments was implicated by plaintiff's action put defendants on notice that they would be required to explain why they left an account with Peoples Gas in the name of Halsted Realty.

Since the allegations in plaintiff's second amended complaint arose from the transaction set up in the first amended complaint, the second amended complaint relates back to 1979. Therefore, counts I, II, and III, of the second amended complaint, along with count IV, may be considered timely filed as to both Austin and Stokes.

■ The third objection raised by plaintiff is that the second amended complaint should not have been dismissed as to defendant Stokes. The trial court found that counts I, II, and III of the complaint as they pertained to both Austin and Stokes were barred by the statute of limitations. Since count IV related back to the first amended complaint in the court's judgment, it was not time-barred as to Austin. However, the court dismissed the entire second amended complaint as to defendant Stokes.

The court's reason for acting as it did is not clear. At the hearing on Stokes' motion for judgment on the pleadings, defense counsel insisted that since Stokes was not served until 1983 any action against her was barred by the applicable statutes of limitations. Defendant now maintains the same position on appeal. The trial court seemed to rely on section 2—616(d) of the Code of Civil Procedure, which provides that when a new defendant is added after the statute of limitations has run, the amendment relates back to the original pleading only under certain narrowly drawn circumstances not present here. Ill. Rev. Stat. 1985, ch. 110, par. 2—616(d).

Neither a statute of limitations nor section 2—616(d) justifies dismissal of the second amended complaint against Stokes. As plaintiff points out, Stokes was named as a defendant in the first amended complaint, which was filed within the statutory period. An action is commenced when the complaint is filed, not when the defendant is served, and the filing of a complaint determines whether an action is instituted during the period prescribed by a statute of limitations. (See Ill. Rev. Stat. 1985, ch. 110, par. 2—201(a); *Jackson v. Navik* (1974), 17 Ill. App. 3d 672, 675, 308 N.E.2d 143.) The fact that Stokes was served after the statutes of limitations had run does not mean that the action against her is time-barred. Similarly, section 2—616(d) does not apply to the present situation since the first pleading was amended to add Stokes as a defendant well before the statutes of limitations had expired.

Although the trial court did not discuss it, Supreme Court Rule 103(b) might allow Stokes to be dismissed from the present action.

Rule 103(b) provides that if a plaintiff fails to exercise reasonable diligence to obtain service upon a defendant prior to the expiration of an applicable statute of limitations, the action as a whole, or as to any unserved defendant, may be dismissed without prejudice. If the failure to exercise reasonable diligence occurs after the statute of limitations has expired, the dismissal shall be with prejudice. (87 Ill. 2d R. 103(b).) Although Stokes was named as a defendant in this case before the applicable statutes of limitations had expired, she was not served until December 1983, several months after the longest statutory period had run. If Stokes is dismissed from this case, it must be done pursuant to Rule 103(b).

Plaintiff contends that Stokes has waived the right to argue that Rule 103(b) applies to this case since she filed an appearance and answer before claiming that the action against her should be dismissed. Moreover, according to the plaintiff, when Stokes filed her amended answer, she alleged that plaintiff did not exercise reasonable diligence in obtaining service on her, but she did not specifically cite Rule 103(b).

Although Stokes stated in her amended answer that defendant failed to exercise reasonable diligence in serving her, she did not argue below and does not contend on appeal that Rule 103(b) is applicable. Furthermore, participation by defendant in litigation may constitute waiver of the right to question the court's personal jurisdiction. (*Lovell v. Hastings* (1973), 11 Ill. App. 3d 221, 223, 296 N.E.2d 608.) When a defendant files an appearance, delays in raising an objection under Rule 103(b), and participates in discovery for the purpose of preparing a defense on the merits, then he waives his right to object to plaintiff's lack of diligence in serving him. See *Farthing v. Natural Gas Pipeline Co.* (1979), 74 Ill. App. 3d 958, 961-62, 393 N.E.2d 683; *Daily v. Hartley* (1979), 77 Ill. App. 3d 697, 703-04, 396 N.E.2d 586; *Meyer v. Wardrop* (1976), 37 Ill. App. 3d 243, 247, 345 N.E.2d 762.

Defendant Stokes filed an appearance in this case and then waited 19 months before objecting to plaintiff's lack of diligence in serving her. This was so despite the fact that plaintiff's actions related to events that occurred as far back as 1975. In view of these circumstances, Stokes may have waived her right to object to tardy service of process. This is an issue of fact that should be decided by the trial court, however, and not by the appellate court on review.

If Stokes has not waived her objection, then the trial court must decide whether this case is appropriate for dismissal under Rule 103(b). There are six factors that courts consider in determining

whether a plaintiff has exercised reasonable diligence in serving a defendant. These are length of time used to obtain service, activities of the plaintiff, plaintiff's knowledge of the defendant's whereabouts, ease with which defendant could have been located, defendant's knowledge that an action was pending against him, and any special circumstances that affected plaintiff's efforts to serve defendant. *Hanna v. Kelly* (1980), 91 Ill. App. 3d 896, 898-99, 414 N.E.2d 1262.

██ Stokes was named as a defendant in 1979, but she was not served until four years later. The only summons for Stokes reflected in the record was served on her in December 1983, and plaintiff has not offered to explain the delay. Once a defendant makes a *prima facie* showing that Rule 103(b) is applicable, it is plaintiff's burden to demonstrate reasonable diligence. (*Green v. Wilmot Mountain, Inc.* (1980), 92 Ill. App. 3d 176, 181, 415 N.E.2d 1076.) It appears from the record before us that plaintiff failed to meet this burden. However, since this issue was not fully aired in the trial court, plaintiff did not have a reasonable opportunity to prove its diligence, and we can not decide the question on appeal.

██ Neither is it possible to determine whether plaintiff's second amended complaint is barred by *laches.* Defendants urged in their amended answer that plaintiff's action was barred by *laches,* and plaintiff argues on appeal that the doctrine of *laches* does not apply in this case. Since the trial court never reached this issue, it cannot be decided on appeal.

In view of the foregoing, the judgment of the trial court should be reversed and the cause remanded for the trial court to consider the following: (1) whether defendant Stokes has waived her right to object to plaintiff's tardy service of process; (2) whether plaintiff exercised reasonable diligence in serving Stokes; (3) whether plaintiff's second amended complaint is barred by *laches*.

Reversed and remanded.

BILANDIC, P.J., and HARTMAN, J., concur.