J.D. MARSHALL INTERNATIONAL, INC., Plaintiff-Appellant, v. FIRST NATIONAL BANK OF CHICAGO, Defendant-Appellee.

First District (1st Division)   No. 1—92—3315

Opinion filed February 14, 1995.—Rehearing denied June 20, 1995.

HARTMAN, J., dissenting.

Shefsky & Froelich, Ltd., of Chicago (Ralph A. Mantynband, of counsel), for appellant.

Jones, Ware & Grenard, of Chicago (Mitchell Ware, Frank M. Grenard, and Cathy A. Pilkington, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff J.D. Marshall International, Inc. (JDMI), appeals orders of the circuit court of Cook County dismissing its amended complaint against defendant First National Bank of Chicago (Bank) with prejudice and twice denying JDMI leave to file a second amended complaint.

The record on appeal indicates the following facts. Prior to February 1984, JDMI was a subsidiary of the Marshall International Trading Company (MITCO), which in turn was a subsidiary of a corporation named Inchscape, Inc. JDMI maintained account number 5103975 at the Bank. In February 1984, JDMI sold substantial assets, including the goodwill of the JDMI name, to the J.D.M. Acquisition Corporation. The selling corporation (the original JDMI) changed its name to Redstart, Inc., and agreed to cease active business under the JDMI name. After the sale, the J.D.M. Acquisition Corporation assumed the JDMI name. As early as February 10, 1984, the Bank was notified of this transaction.

On February 6, 1984, plaintiff sent a letter to the Bank directing the Bank to pay the proceeds of a Venezuelan letter of credit, issued in the name of MITCO, being paid by Insanova, one of plaintiff's customers in Venezuela. Insanova had requested that MITCO be the beneficiary of the letters of credit because MITCO's name had already been submitted to the Venezuelan government agency regulating foreign currency transfers; a change in the named beneficiary would have delayed the transaction for months. Plaintiff agreed to

Insanova's request. The letter directed the Bank to wire transfer the proceeds to plaintiff's account at the American National Bank of Chicago (ANBC). The Bank was aware that the proceeds were plaintiff's property and paid the proceeds to plaintiff. Redstart had completed similar transactions with Insanova before selling the JDMI name to plaintiff.

On July 27 and August 23, 1984, plaintiff shipped goods to Insanova that were delivered against letters of credit confirmed by the Bank. As with the February 6, 1984, transaction, MITCO was to be the named beneficiary and the funds were to be transferred to plaintiff's account at ANBC.

Plaintiff maintains that on July 27 and August 23, 1984, it also submitted drafts for the proceeds of the letters of credit. On October 4, 1984, John Ewing, the president of Redstart, sent a letter to the Bank directing the Bank to transfer the proceeds of the letters of credit to plaintiff's account at ANBC. Plaintiff maintains that John Ewing sent a second letter to the same effect the same day in his capacity as president of MITCO. The Bank then received the documents required to pay the drafts presented under the letters of credit from plaintiff, not MITCO. The Bank accepted these documents on October 5, 1984.

Upon receiving the documents from plaintiff, the Bank notified the Banco Provincial of Caracas, Venezuela, to request authorization to make payments of $154,633.84 and $85,326.72 under the letters of credit. On October 8, 1984, John Ewing sent a letter to the Bank directing that the proceeds should be transferred to Redstart's account at the Northern Trust Bank. Plaintiff did not receive a copy of this letter.

Plaintiff maintains that during October, November and December 1984, no less than twice weekly, plaintiff telephoned the Bank, seeking to trace the proceeds of the letters of credit. The Bank consistently advised plaintiff that there were defects in documentation, delays in presentation, and that the proceeds would be delivered to plaintiff once the drafts were received from Venezuela. In November 1984, the proceeds of the letters of credit, totalling $239,960.56, were deposited in the account maintained by Redstart at the Bank under the JDMI name.

On May 5, 1985, plaintiff filed a complaint against defendant in the circuit court of Cook County, seeking to enjoin defendant from accepting further deposits in plaintiff's name. The trial court entered a preliminary injunction on June 7, 1985. Plaintiff amended the initial complaint to seek money damages for alleged negligence on July 22, 1985.

The case then proceeded until April 7, 1987, when the trial court stayed the matter pending the resolution of a related dispute between plaintiff and Redstart, Inc. On December 20, 1984, plaintiff had filed a demand for arbitration before the American Arbitration Association pursuant to the agreement to sell the JDMI name and export business to plaintiff. (See *J.D. Marshall International, Inc. v. Redstart, Inc.* (7th Cir. 1991), 935 F.2d 815, 817-18.) The events giving rise to the arbitration and related Federal litigation[1] are largely those alleged by plaintiff in this action as described above. The arbitration resulted in a net recovery of $38,740.36 for plaintiff, after offsets of amounts owed Redstart. (See *J.D. Marshall International,* 935 F.2d at 818.) The trial court vacated the stay on January 18, 1989, on plaintiff's motion.

Plaintiff filed the amended complaint at issue on January 9, 1990, in response to the Bank's motion for summary judgment, which was filed on October 30, 1989. The Bank subsequently amended its motion for summary judgment; the motion was stricken by the trial court on May 16, 1991.

The amended complaint contained two counts. The first count contained allegations regarding the Insanova letters of credit. Plaintiff alleged that the Bank had a duty to: (1) inquire into the ownership of the proceeds: (2) refrain from allowing Redstart to maintain an account in the JDMI name after that name was sold to plaintiff; and (3) only honor instructions from JDMI personnel, rather than Redstart personnel, regarding an account with the JDMI name.

Count II of the amended complaint contained additional allegations regarding a wire transfer from another of plaintiff's customers, Alfred Kaut & Co. of Wuppertal-Elberfield, West Germany (Kaut). Plaintiff alleged that on April 3, 1985, Kaut notified plaintiff that it had paid $19,734.64 to the Bank, which had been credited to account number 5103975. This account was the one maintained by Redstart under the JDMI name. Plaintiff alleged that the Bank's conduct amounted to willful, wanton and gross negligence, entitling plaintiff to compensatory and punitive damages.

---

[1]Plaintiff also filed a complaint in Federal court, alleging that Redstart breached the purchase agreement and violated Federal racketeering laws. The United States Court of Appeals for the Seventh Circuit ultimately affirmed the decision of the Federal district court to dismiss plaintiff's claims and deny leave to amend because plaintiff was unable to show a pattern of racketeering required to state a claim under the Federal racketeering statutes and because the breach of contract claim was a pendent State law claim that would not be considered in the absence of a viable Federal law claim. See *J.D. Marshall International,* 935 F.2d 815.

On July 13, 1992, the Bank filed and presented to the trial court seven motions *in limine* and memoranda in support thereof. On July 17, 1992, the trial court entered an order memorializing rulings the trial court apparently made on July 13, 1992. The trial court did not consider the Bank's first motion *in limine* on the ground that it was made moot by the trial court's other conclusions. The trial court denied the Bank's second and fourth motions *in limine*, which were based on the concepts of estoppel, satisfaction and double recovery, but indicated that the trial court would, if required, give a jury instruction indicating that plaintiff was unable to recover damages already awarded in a prior proceeding (*e.g.,* the arbitration between plaintiff and Redstart).

The trial court granted the Bank's third motion *in limine*, which sought to bar any evidence or comment regarding the alleged negligence of the Bank in the matter of the Insanova letters of credit, on the ground that the Bank's duties were governed in this respect by article five of the Illinois Uniform Commercial Code—Letters of Credit (Ill. Rev. Stat. 1989, ch. 26, par. 5—101 *et seq.*) and that the Bank did not breach these duties. The trial court also granted the fifth and six motions *in limine*, barring plaintiff from presenting evidence of economic or consequential damages, based on the "economic loss doctrine." The trial court granted the seventh motion *in limine*, precluding evidence of punitive damages on the ground that even if the facts alleged were true, they did not establish gross negligence on the part of the Bank. The trial court then dismissed count I of the amended complaint with prejudice on the issue of duty and dismissed count II with prejudice on the ground that plaintiff had been compensated for the damages to which it was legally entitled.

The trial court also entered an order on July 17, 1992, denying plaintiff's motion to consider the rulings on the motions *in limine* as a motion to strike the complaint and for leave to file an amended complaint. Although plaintiff's motion seeking leave to file a second amended complaint does not appear in the record on appeal, the Bank's response does appear in the record and the motion is discussed at length in the report of proceedings dated July 17, 1992, which appears in the supplemental record on appeal.

On August 6, 1992, plaintiff filed a motion captioned "post-trial motion." The trial court entered an order denying plaintiff's motion on September 3, 1992. Plaintiff filed a notice of appeal to this court on September 23, 1992.

■ Initially, we address the question of whether this court has jurisdiction to hear this appeal. Supreme Court Rule 303(a)(1) requires that a notice of appeal be filed within 30 days after the entry of ei-

ther the final judgment or the order disposing of the last timely post-trial motion directed against the judgment. (134 Ill. 2d R. 303(a)(1).) The timely filing of a notice of appeal is jurisdictional. *E.g., In re Application of the County Treasurer and Ex-Officio County Collector of Cook County for Judgment and Order of Sale Against Real Estate Returned Delinquent for the Nonpayment of General Taxes for 1984* (1990), 208 Ill. App. 3d 561, 564, 567 N.E.2d 486, 488.

■ Our supreme court has held that a motion for leave to amend a complaint, after dismissal with prejudice, does not extend the time for filing a notice of appeal because such a motion is not "directed against the judgment" within the meaning of Rule 303(a)(1) and section 2—1203 of the Code of Civil Procedure (735 ILCS 5/2—1203 (West 1992)). (*Andersen v. Resource Economics Corp.* (1990), 133 Ill. 2d 342, 347, 549 N.E.2d 1262, 1264, citing *Fultz v. Haugan* (1971), 49 Ill. 2d 131, 305 N.E.2d 873.) Plaintiff claims that its "post-trial motion" was "directed against the judgment" because it sought to have the trial court's prior orders vacated in addition to seeking leave to amend its complaint. Plaintiff also claims that its motion attacked the legal and factual determinations made in the trial court's dismissal order.

■ The nature of a motion is determined by its substance rather than its caption. (*People ex rel. Ryan v. City of West Chicago* (1991), 216 Ill. App. 3d 683, 688, 575 N.E.2d 1321, 1324.) Moreover, a post-judgment motion must allege grounds that would warrant the granting of the relief requested. (*Beck v. Stepp* (1991), 144 Ill. 2d 232, 240-41, 579 N.E.2d 824, 828.) The purpose of a post-judgment motion is to permit the circuit court to review its decisions; accordingly, specificity is required. (*Andersen*, 133 Ill. 2d at 347, 549 N.E.2d at 1264.) In this case, it may be useful to excerpt plaintiff's motion at length:

"NOW COMES the plaintiff J.D. Marshall International, Inc. ('J.D. Marshall') by its attorney *** and moves this honorable court to vacate the judgment heretofore entered in this cause on July 17, 1992, a copy of which is attached hereto and made a part hereof. Plaintiff moves to vacate the judgment described above for a trial and for reconsideration of the court's order denying leave to file a second amended complaint.

Plaintiff attaches hereto and lodges the court its proposed second amended complaint which clearly sets forth facts which show that under the circumstances existing between the First National Bank of Chicago ('First National Bank') and J.D. Marshall that it has a right to recover as a matter of law.

Plaintiff moves further, in the alternative, to the extent that the court conducted a trial, that it be granted a new trial, or in

the alternative, that the judgment heretofore entered in the above referenced case be modified and that plaintiff be granted leave to file a second amended complaint.

The court was advised orally and is advised again that this action is brought in the name of the plaintiff for the benefit of its creditors pursuant to proceedings filed in the United States Bankruptcy Court for the Northern District of Illinois. The trustee in such action has appeared in this action and the authority to pursue this action has been previously filed with the court.

The court in ruling on seven motions *in limine* presented to the court without prior notice and only after the defendant had answered the trial call as being ready for trial, prejudiced this plaintiff. The court would have drawn different inferences or different conclusions which would have set forth plaintiff's right to recover as is more specifically articulated in the proposed second amended complaint as is incorporated herewith had said motions been presented prior to the time all parties answered ready for trial.

*Procedural History*

\* \* \*

The court's ruling in sustaining defendant's motions *in limine* barring the plaintiff from offering evidence in support of facts which would create a right to recover was effectively a ruling on a motion to dismiss without the taking of any evidence but solely on the pleadings. In such a circumstance, without the taking of any evidence, or the actual commencement of a trial, the impanelling of a jury as demanded or the swearing of a single witness, the court granted, in effect, summary relief by way of summary judgment or by the granting of a motion to dismiss. In either circumstance, this plaintiff was entitled as a matter of law to file a second amended complaint inasmuch as the court made a determination that there was no possible right to recover on the presentation of any facts known to the court.

The court in entering its judgment held in substance that after granting defendant's motion in limine [lack of underlining in original] the complaint was now defective and stated no right to recovery.

Inasmuch as the court adduced no evidence at trial, none being taken, the court made no ruling based upon the evidence, no jury was impanelled, no verdict was returned, and the court dismissed the complaint based upon its allowance of motions in limine [lack of underlining in original] barring the presentation of evidence. The amended complaint as presented and the attached proposed second amended complaint which plaintiff now presents and includes matters which when proved will require the rendition of a verdict and ultimately judgment in favor of the plaintiff.

WHEREFORE, movant prays that the original judgment of dismissal of July 17, 1992 be vacated, that the plaintiff be granted leave to file a second amended complaint, or, in the alternative, a new trial; or such other, further and different relief as the court may deem just."

These excerpts demonstrate that the motion substantively seeks leave to file a second amended complaint. It is true that plaintiff's "post-trial motion" expressly requests certain forms of relief that are necessary to toll the time for filing a notice of appeal. Nevertheless, such requests, by themselves, fail to meet the specificity requirement imposed by our supreme court in cases such as *Andersen* and *Beck*. If a motion were to fall outside the scope of *Andersen* merely by requesting that the trial court vacate, modify or reconsider its dismissal with prejudice in the course of seeking leave to amend, then *Andersen* would be meaningless, because such relief is implicit in seeking leave to amend after a dismissal with prejudice.

The excerpted portions of the motion come closest to specificity in a passing assertion that plaintiff is entitled as a matter of law to file a second amended complaint following a dismissal or summary judgment. Under certain circumstances, a motion to set aside a dismissal on the ground that a defect in the complaint could be cured easily by amendment could toll the time for filing a notice of appeal. In *Sears v. Sears* (1981), 85 Ill. 2d 253, 257-58, 422 N.E.2d 610, 611-12, the supreme court summarized the companion appeal of *Drafz v. Parke, Davis & Co.* (1980), 80 Ill. App. 3d 540, 400 N.E.2d 515, in a way that suggests that such a motion may toll the time for appeal. However, there is no indication that the issue of whether such a motion falls under Rule 303(a)(1) and section 2—1203 of the Code of Civil Procedure was argued before the *Sears* court. Nor is there any indication of whether the motion in *Sears* specified alleged error as to the judgment or order itself.

Rather, the *Sears* court held that a *successive* motion that "was little more than a slightly lengthened redraft of the first" was improper and did not extend the time for appeal. (*Sears*, 85 Ill. 2d at 257, 260, 422 N.E.2d at 612, 613.) In this case, the record indicates that plaintiff presented a motion for leave to file a second amended complaint no later than July 17, 1992, when the trial court heard argument on the motion and denied it. Plaintiff's initial motion for leave to amend is not included in the record. As the appellant, plaintiff has the burden of presenting a complete record on appeal and cannot seize on the fortuitous disappearance of portions of the record to validate otherwise barred successive motions. (*Nenadic v. Grant Hospital* (1979), 75 Ill. App. 3d 614, 625, 394 N.E.2d 527, 536.)

In addition, the transcripts of proceedings provided in the record and supplemental record on appeal indicate that the trial court believed plaintiff's "post-trial motion" to be repetitive and merely added matters that could have been included earlier in the litigation. Thus, even if plaintiff's "post-trial motion" could be interpreted as within the scope of Rule 303(a)(1) and section 2—1203 of the Code of Civil Procedure, it could not toll the time for appeal, given the interest in finality and certainty of determining the time for appeal expressed by the *Sears* court.

Similarly, the center portion of the motion (not excerpted above), which recounts the procedural history of the case, lacks the specificity to bring the motion within the scope of Rule 303(a)(1) and section 2—1203 of the Code of Civil Procedure. The procedural history indicates that other judges denied pretrial motions raising the arguments the Bank presented in its motions *in limine*. However, a circuit court may modify an interlocutory order at any time prior to final judgment, and it does not matter that the judge who vacates or alters the order is not the judge who entered it in the first instance. (*Peoples Gas Light & Coke Co. v. Austin* (1986), 147 Ill. App. 3d 26, 31, 497 N.E.2d 790, 794.) Moreover, plaintiff's motion fails to specify why plaintiff believes the prior judges were correct and the judge entering the dismissal was in error.

Two examples in this regard may be instructive. First, plaintiff's motion notes at least twice that other trial judges had denied the Bank's motions for summary judgment, rejecting the Bank's arguments that the arbitration proceeding resulted in *res judicata* or collateral estoppel in this case. Plaintiff's motion, however, never expressly alleges that the trial court erred in ultimately dismissing the case for these reasons. Moreover, the trial court's ruling *in limine* was based on the concepts of estoppel, satisfaction and double recovery relating to the arbitration award. These concepts are well established in Illinois law. (See, *e.g.*, *Bodam v. City of Chicago* (1993), 241 Ill. App. 3d 937, 941-42, 609 N.E.2d 802, 805.) The trial court concluded that plaintiff recovered all the damages to which it was legally entitled in the arbitration proceeding between plaintiff and Redstart. Plaintiff's motion does not allege that this rationale was legally incorrect.

Second, the nonexcerpted portion of plaintiff's motion comes closest to specifying an alleged error when it refers to a memorandum plaintiff filed in opposition to one of the Bank's prior motions to dismiss. The motion discusses *Securities Funds Services, Inc. v. American National Bank & Trust Co.* (N.D. Ill. 1982), 542 F. Supp. 323, at length, further noting that Judge Quinn relied on that decision in

denying the Bank's motion to dismiss. *Securities Funds Services, Inc.* discusses the duty of a collecting bank to the initiator of a wire transfer under article four of the Uniform Commercial Code.

The trial court's rulings on the motions *in limine* do not include any ruling on the Bank's alleged duty to plaintiff regarding the wire transfer. The trial court dismissed the count regarding the wire transfer on the issue of damages. Moreover, plaintiff's motion contains no specific allegation that the trial court's ultimate rulings on the alleged duty of the Bank regarding the letter of credit are in error.

These examples illustrate the sound reasons for requiring that a post-trial motion specify alleged errors in order for the motion to toll the time for filing a notice of appeal. A motion that implicitly criticizes the trial court's application of *res judicata* and collateral estoppel, neither of which was the actual basis for the trial court's ruling, does not afford the trial court the opportunity to review the ruling it actually made on the issue. A motion that implicitly criticizes the trial court's ruling on the issue of duty under count II does not afford the trial court to revisit its actual ruling on the issue of damages under count II.

Plaintiff's motion, by requesting a new trial, also raises the question of whether there was a trial in this case. The case law regarding voluntary dismissals "before trial or hearing begins" under section 2—1009 of the Code of Civil Procedure (735 ILCS 5/2—1009 (West 1992)) may be helpful in this regard. For example, *Western Land Corp. v. Lichtenstein* (1977), 47 Ill. App. 3d 233, 361 N.E.2d 730, suggests that whether evidence has been heard is an important factor in determining whether a trial or hearing has commenced. (See *Lichtenstein*, 47 Ill. App. 3d at 240-41, 361 N.E.2d at 735-36.) The record here indicates that the jury had not been selected and no evidence was heard at the time the case was dismissed. In addition, the trial court dismissed this case after deciding a number of the Bank's motions *in limine*, which are generally classified as pretrial motions. (See, *e.g.*, *Lundell v. Citrano* (1984), 129 Ill. App. 3d 390, 395, 472 N.E.2d 541, 544-45.) Given this record, we conclude that no trial had commenced when plaintiff's case was dismissed with prejudice. It follows that a new trial could not have been granted in this case.

The cases cited by plaintiff in support of jurisdiction are distinguishable from this appeal. *Hanna v. American National Bank & Trust Co.* (1988), 176 Ill. App. 3d 938, 531 N.E.2d 961, involved a motion to vacate a summary judgment; there is no indication that the plaintiff there sought leave to amend. Similarly, in *State Mechanical Contractors, Inc. v. Village of Pleasant Hill* (1985), 132 Ill. App. 3d

1027, 477 N.E.2d 509, there is no indication that the plaintiff sought leave to amend in the trial court. Rather, this court indicated that plaintiff was to be allowed to amend because the court had established a new rule permitting a cause of action in that case. (*State Mechanical Contractors, Inc.*, 132 Ill. App. 3d at 1032-33, 477 N.E.2d at 513.) *Loyola Academy v. S&S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 586 N.E.2d 1211, was an interlocutory appeal and there is no indication in the opinion that plaintiff may have failed to allege specific error.

Plaintiff notes that the trial court denied its "post-trial motion," instead of dismissing it for lack of jurisdiction. However, the jurisdiction of the trial court is distinct from the jurisdiction of this court. Plaintiff also notes that when the Bank objected to the captioning of the "post-trial motion" in the trial court, the trial court stated that it was satisfied that plaintiff had a right to file the motion. However, the issue on appeal is not whether plaintiff has a right to file the motion in the trial court but whether the motion is "directed against the judgment" pursuant to Rule 303(a)(1).

Plaintiff claims that *Andersen* and the other cases cited by the Bank are distinguishable from this case, because there is "no litany of the case being dismissed for want of prosecution, of prior complaints being dismissed and repleading." Initially, we note that the record shows that the case was dismissed for want of prosecution on July 3, 1991, and reinstated on July 16, 1991. We also note that the trial court had already denied leave to amend the complaint on July 17, 1992, when the complaint was dismissed. Furthermore, there is the successive motion problem described above. However, assuming *arguendo* that there is no "litany" of problems here, it must be noted that the portion of *Andersen* upon which plaintiff relies is clearly *dicta* and was not the basis for the disposition of the case. See *Andersen*, 133 Ill. 2d at 346-47, 549 N.E.2d at 1264.

■ In sum, we conclude that plaintiff's "post-trial motion," seeking leave to amend its complaint, was not "directed against the judgment" within the meaning of Rule 303(a)(1). Moreover, the record indicates that it was a successive motion for leave to amend that largely repeated prior allegations. Thus, the motion did not toll the 30-day time limit for filing a notice of appeal to this court. Plaintiff's notice of appeal was filed on September 23, 1992—more than 30 days after the July 17, 1992, orders dismissing the case and denying leave to amend. Consequently, this court lacks jurisdiction to hear this appeal.

For all of the aforementioned reasons, this appeal is dismissed for lack of jurisdiction.

Dismissed.

BUCKLEY, J., concurs.

JUSTICE HARTMAN, dissenting:

Contrary to the legislative directive that the "Act *** be liberally construed, to the end that controversies may be speedily and finally determined according to the substantive rights of the parties" (735 ILCS 5/1—106 (West 1992)), the majority has construed section 2—1203 (735 ILCS 5/2—1203 (West 1992)) of the Act hypertechnically and punitively by ignoring the plain language of the post-judgment motion filed by J.D. Marshall International, Inc. (Marshall), and dismissing the appeal for want of jurisdiction. For this reason I am compelled to dissent.

Although citing and quoting language, in part, from Marshall's motion at pages 888-890 of the opinion, the majority has chosen to emphasize only one aspect thereof and to ignore what is plainly in compliance with both statute and case authority. Under section 2—1203, a post-judgment motion in nonjury cases relates to motions for rehearing, retrial, modification or vacature of the judgment, or for other relief.

In order to constitute a post-judgment motion acceptable for purposes of Supreme Court Rule 303(a)(1), the putative section 2—1203 motion "must include a request for at least one of the forms of relief specified" therein and must "allege grounds that would warrant the granting of the relief requested." (*Beck v. Stepp* (1991), 144 Ill. 2d 232, 240, 579 N.E.2d 824; *Andersen v. Resource Economics Corp.* (1990), 133 Ill. 2d 342, 347, 549 N.E.2d 1262.) The subject motion clearly moves the court "*to vacate the judgment* *** entered in this cause on July 17, 1992 *** *for a [new] trial and* for reconsideration of the court's order denying leave to file a second amended complaint." (Emphasis added.) In its prayer for relief, Marshall iterates its request that the "*judgment of dismissal* *** *be vacated*, that the plaintiff [Marshall] be granted leave to file a second amended complaint, or, *in the alternative, a new trial*." (Emphasis added.) Isolating the request for reconsideration of the court's denial of leave to file a second amended complaint as the sole remedy sought, and ignoring that part of the motion seeking vacature of the judgment and a new trial (on the merits), the majority unjustifiably has transformed the motion into one seeking only leave to file an amended complaint.

The second requirement set forth in *Beck* and *Andersen*, that the post-judgment motion allege grounds that would warrant the relief requested, is also fulfilled. Marshall's motion specified that the circuit court erroneously ruled adversely to Marshall on each of seven motions *in limine* to its prejudice and, absent such erroneous rulings, "would have drawn different inferences or different conclusions which would have set forth [Marshall's] *** right to recover as is more specifically set forth in the proposed second amended complaint, as is incorporated herewith." A motion is a pleading (*Chimerofsky v. School District No. 63* (1970), 121 Ill. App. 2d 371, 374, 254 N.E.2d 480; *Russell v. Hertz Corp.* (1985), 139 Ill. App. 3d 11, 15, 487 N.E.2d 630; *Pence v. Village of Rantoul* (1973), 12 Ill. App. 3d 446, 449, 298 N.E.2d 775), which may incorporate by reference any other pleading. (134 Ill. 2d R. 134.) The incorporated allegations set forth in the referenced five-count amended complaint more than adequately recount the history of dealings, customs and usages between all those concerned and makes extensive assertions of fact, contrary to the findings of the circuit court, which would entitle Marshall to judgment.

Leaping to the alternative relief requested, leave to file an amended complaint, the majority has completely discounted and ignored these other parts of Marshall's post-judgment motion, for vacatur or a new trial, and the grounds for doing so. To hold, as the majority does, that Supreme Court Rule 303(a)(1) has not been satisfied under these circumstances is without precedent in any authority cited. The appellate court ineluctably has jurisdiction of this case and I would decide the appeal on its merits. Accordingly, I dissent.