CLARENCE R. DAILY, Plaintiff-Appellant, *v.* GEORGE HARTLEY, Public Adm'r of the Estate of Richard Mac Farlane, Deceased, Defendant-Appellee.

Third District   No. 78-293

Opinion filed October 24, 1979.

Theodore J. Bednarek and George P. Troha, both of Troha, Troha & Bednarek, of Joliet, for appellant.

Sidney Z. Karasik, of Chicago, and Frank H. Masters, Jr., of Robson, Masters, Ryan, Brumund & Belom, of Joliet, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

This case involves an appeal from an order of the Circuit Court of Will County dismissing the complaint of plaintiff Clarence R. Daily with prejudice pursuant to Supreme Court Rule 103(b) (Ill. Rev. Stat. 1977, ch. 110A, par. 103(b)) on the grounds that he had not been diligent in obtaining service upon the now deceased defendant Richard Mac Farlane. For the reasons stated hereafter, we affirm.

The plaintiff Daily and Richard Mac Farlane were union pipefitters. Early in 1968 they had become acquainted through their work at a Rexall Chemical plant in Will County. On May 22 of that year Mac Farlane was involved in an automobile accident which resulted in injury to Daily, who was allegedly riding as his passenger. On May 21, 1970,—one day before the two-year statute of limitations for personal injury actions would have run—Daily filed a $50,000 personal injury suit against Mac Farlane in the Circuit Court of Will County for the injuries he sustained in the accident. In the complaint the plaintiff referred to Mac Farlane as "Mac Farland." The misspelling of the defendant's surname was attributable to a

mistaken belief on the part of Daily that the defendant's name was in fact "Mac Farland." The summons placed with the sheriff of Will County on May 21 was never served, and expired on June 22, 1970.

The testimony was that after his release from the hospital but prior to filing suit Daily made numerous personal attempts to locate the defendant, none of which were successful. Neither Mac Farlane nor two other individuals who were at the accident scene could be found at the Rexall Chemical plant. Inquiries to acquaintances as to Mac Farlane's whereabouts were to no avail. On one occasion Daily sought to obtain Mac Farlane's address from Pipefitters' Union Local 597 in Chicago, but was informed that the union would not divulge any such information. A search of the Chicago telephone directory also proved fruitless.

Attorney Joseph Tryner was initially retained by Daily to represent him in the personal injury suit against "Mac Farland." Like Daily, Tryner indicated he made a number of attempts to locate the defendant. He checked with both the Illinois State Police and the Will County Sheriff's Department to ascertain if an accident report had been filed, and was informed that none had. He made two efforts to obtain the defendant's address from the pipefitters' union, but received the same negative response that was given to Daily. The efforts of an investigator whom he hired to find Mac Farlane proved unsuccessful, as did examination of Chicago and suburban telephone directories. Tryner did have an alias summons issued to an address in Justice, Illinois, but the summons was returned "not found."

In 1975, with Mac Farlane still not having been served, Tryner turned the case over to another attorney, George P. Troha. Troha repeated many of the steps both Daily and Tryner had taken in their endeavors to locate Mac Farlane. He contacted the Will County Sheriff's Department, the pipefitters' union, and checked local telephone directories. All of these efforts proved unsuccessful. Then, in response to Troha's request that he renew his efforts to find Mac Farlane, Daily discovered from one of Mac Farlane's friends that the defendant had been killed in a snowmobile accident. After finding that no estate for Mac Farlane had been opened in either Cook or Du Page counties, Troha filed a petition to appoint the public administrator of Will County as administrator of Mac Farlane's estate. Troha subsequently obtained service upon George Hartley, the public administrator and defendant in the instant case, on January 18, 1977.

Attorney Frank Masters represented Mac Farlane's automobile liability insurer, The Insurance Company of North America, and was authorized to represent defendant Hartley under a reservation of rights agreement. On July 1, 1977, Masters personally appeared in court on behalf of Hartley and advised the court that he would represent the

defendant in future proceedings involving the Daily lawsuit. On this occasion he asked for and was granted a continuance until October. On two subsequent occasions (October 3 and November 1, 1977) both Troha and Masters appeared before the court and the cause was continued at Masters' request. On November 1 the trial was set for January 9, 1978.

On November 5, 1977, Troha took a deposition of Richard Mac Farlane's widow, Charlene. Although Masters was present at the deposition, he did not participate. Later in November (November 29) Masters filed a special and limited appearance and a motion to dismiss the plaintiff's complaint pursuant to Supreme Court Rule 103(b) on the grounds that the plaintiff had not been diligent in obtaining service upon Richard Mac Farlane.

At the hearing on the motion Daily, his attorneys Tryner and Troha, and Masters testified in regard to the efforts made to locate the Mac Farlanes. Charlene Mac Farlane also testified. She stated that her late husband's surname was "Mac Farlane" and had never been "Mac Farland." She further stated that until about 1970 she and her husband lived in Hickory Hills. They then moved to North Riverside, where they lived until 1971 when they moved to 136 Creekwood, Lemont. In 1973 or 1974 the Mac Farlanes moved to Lockport. Their address was listed in the Lockport directory until Richard Mac Farlane's death in December of 1975. In addition, a photocopy of an Illinois State Police accident report was introduced at the hearing. The report states, *inter alia*, that Clarence "Daley" and Richard Mac Farlane of 8641 S. 82nd Avenue, Hickory Hills, were involved in an accident on Bloggett Road at I-55 on May 22, 1968. Charlene Mac Farlane obtained the report by writing a letter requesting a copy to the accident report division of the Illinois State Police. On January 10, 1978, the trial court dismissed the plaintiff's complaint with prejudice.

The only issue presented in this case on appeal is whether the trial court erred in dismissing the plaintiff's complaint pursuant to Supreme Court Rule 103(b). In disposing of this issue, we will utilize a two-step analysis: First, were the plaintiff and his counsel reasonably diligent in their efforts to serve the late Richard Mac Farlane; second, if the plaintiff and his attorneys were not reasonably diligent, did the defendant nonetheless waive the right to object under Rule 103(b) by participating in the early stages of the litigation.

The applicable Supreme Court Rule, Rule 103(b) (Ill. Rev. Stat. 1977, ch. 110A, par. 103(b)) reads in pertinent part:

> "(b) Dismissal for Lack of Diligence. If the plaintiff fails to exercise reasonable diligence to obtain service prior to the expiration of the applicable statute of limitations, the action as a

whole or as to any unserved defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice. * * *."

■■ The standard for determining "reasonable diligence" is an objective one, and the burden is upon the plaintiff to show that he has exercised reasonable diligence in his efforts to obtain service. (*Piscitello v. Barton* (1978), 66 Ill. App. 3d 451, 384 N.E.2d 47.) The courts that have been faced with this issue in the past have looked at six factors in determining whether plaintiff's efforts to obtain service reflect reasonable diligence. These factors are: The length of time used to obtain service; the activities of the plaintiff; any knowledge on the part of the plaintiff of defendant's location; the ease with which the defendant's whereabouts could have been ascertained; the actual knowledge of defendant of the pendency of the action; and special circumstances which would affect the plaintiff's efforts. *Licka v. William A. Sales, Ltd.* (1979), 70 Ill. App. 3d 929, 388 N.E.2d 1261; *Piscitello v. Barton* (1978), 66 Ill. App. 3d 451, 384 N.E.2d 47; *Faust v. Michael Reese Hospital & Medical Center* (1978), 61 Ill. App. 3d 233, 377 N.E.2d 1040; *Montero v. University of Illinois Hospital* (1978), 57 Ill. App. 3d 206, 372 N.E.2d 1010; *Alsobrook v. Cote* (1971), 133 Ill. App. 2d 261, 273 N.E.2d 270.

Applying these factors to the case at bar, we find that the defendant Hartley was served 8 years, 7 months, and 27 days after the occurrence, and 6 years, 7 months, and 28 days after the action was originally filed. Concerning the plaintiff's activities during this time, we have heretofore set forth in some detail the efforts made by Daily, Tryner, and Troha to obtain service. It is obvious that neither the plaintiff nor his attorneys had any knowledge of Mac Farlane's whereabouts prior to service upon the public administrator. Had they known, they would not have expended their time and effort in searching telephone directories. However, it seems equally as obvious that Mac Farlane's location could have been ascertained with little difficulty. Certainly the fact that Mac Farlane and his wife lived in several different communities from 1969-1975 hindered plaintiff's efforts to obtain service, as did the confusion surrounding Mac Farlane's surname. Nevertheless, plaintiff could have easily discovered Mac Farlane's real name and address by subpoenaing the records of the pipefitters' union local. In addition, the ease with which Mrs. Mac Farlane obtained the accident report from the State Police makes it evident that plaintiff should have obtained the report with equal ease. As concerns the final two factors to be considered by the court in examining the diligence of plaintiff in obtaining service, it appears that neither the late Richard Mac Farlane nor his widow had actual knowledge of the lawsuit's

pendency. Lastly, the confusion involving the defendant's surname, although easily cured, certainly must be considered to be a "special circumstance" affecting plaintiff's efforts.

■■ "A motion for dismissal for lack of diligence to obtain service is addressed to the sound discretion of the trial court, and it is only where there is an abuse of discretion that a reviewing court will interfere." (*Montero v. University of Illinois Hospital* (1978), 57 Ill. App. 3d 206, 209, 372 N.E.2d 1010, 1013.) Although the plaintiff and his attorneys have done more than other plaintiffs in similar cases in trying to locate Mac Farlane (see, *e.g., Alsobrook v. Cote* (1971), 133 Ill. App. 2d 261, 273 N.E.2d 270), given the six factors discussed above we cannot say that the trial court abused its discretion in dismissing the plaintiff's complaint with prejudice. This is not a case of defendant Mac Farlane and his wife making every effort to avoid service. There is no evidence that the Mac Farlanes changed residences to hinder and delay the plaintiff, nor is there any evidence that the confusion concerning the spelling of Mac Farlane's surname was instigated by him. This is, rather, simply a case of plaintiff failing to use reasonable diligence and a little ingenuity in his endeavor to find the defendant. The almost 7-year delay in service is much too long considering the relative ease with which the defendant's correct name and address could have been obtained at the outset from the pipefitters' union or through the State police. We find the plaintiff's inability to obtain the accident report particularly revealing. The plaintiff and his counsel were unable, over an 8-year period, to obtain the State police's accident report. Yet Charlene Mac Farlane, by simply sending $2 to the "State Police Accident Report Division" in Springfield, was able to receive a copy. The plaintiff's efforts, considering the length of time involved, are hardly indicative of reasonable diligence. The trial court finding in this regard is not erroneous.

Because we have found the plaintiff not to have acted diligently in obtaining service, we must address the issue of a possible waiver by defendant of the Rule 103(b) objection. The plaintiff contends that the defendant waived objection to plaintiff's alleged lack of diligence by participating in the early stages of the litigation. The case relied upon by plaintiff in support of his position is *Lovell v. Hastings* (1973), 11 Ill. App. 3d 221, 296 N.E.2d 608. In *Lovell* there was a 4-month delay from the filing of an appearance by defendant to the filing of a motion to dismiss under Rule 103(b). In addition, the defendant during this time filed answers to interrogatories and took a deposition. The court held that the delay coupled with the active participation in the litigation constituted a waiver of the Rule 103(b) objection. In the instant case, the plaintiff alleges that the 5-month delay between defendant's first appearance (July 1, 1977) and the filing of the motion to dismiss under Rule 103(b)

(November 29, 1977), combined with defense counsel Masters' attendance at the discovery deposition of Mrs. Mac Farlane and his three court appearances (July 1, October 3, and November 1, 1977), constituted under *Lovell* a waiver of the Rule 103(b) objection.

The defendant relies on two cases, *Montero v. University of Illinois Hospital* (1978), 57 Ill. App. 3d 206, 372 N.E.2d 1010, and *Meyer v. Wardrop* (1976), 37 Ill. App. 3d 243, 345 N.E.2d 762, in contending that *Lovell* is inapplicable to the instant case. In both *Montero* and *Meyer* the plaintiffs argued that on the basis of *Lovell* the defendant's activities amounted to a waiver of the Rule 103(b) objection. However, the First District found *Lovell* to be factually distinguishable. The court pointed out that in *Lovell* the plaintiffs undertook considerable effort to locate the defendant and have him served, whereas there was no such activity by the plaintiffs in either the *Meyer* or *Montero* cases. In addition, in *Meyer* the court stated that in *Lovell*, as opposed to *Meyer*, the defendant "actively participated in the defense of the action on its merits without raising any defense under Rule 103(b) in the initial stages of litigation." 37 Ill. App. 3d 243, 247, 345 N.E.2d 762, 766.

We fail to see how *Lovell* is inapposite on these grounds. It seems to us that when the issue before the court is a waiver by the defendant, the particular activities of the plaintiff are irrelevant. In any given case the plaintiff may have exhibited "considerable effort" to obtain service (*Lovell*), or may have done little to locate the defendant (*Meyer; Montero*). Whatever the plaintiff does, however, has no bearing in deciding whether the defendant, by a full and voluntary participation in the initial stages of the litigation, has waived objection to defendant's lack of diligence under Rule 103(b). In the case before us *Lovell* cannot be held inapplicable merely because the plaintiffs in that case were diligent in their effort to serve the defendant and in this case the plaintiff was not. *Lovell* can only be distinguished factually if the defendants' activities in the instant case are less than the full and voluntary participation in the early stages of the litigation which were found in *Lovell* to constitute a waiver.

■■ The *Lovell* opinion does not reveal the nature of defendant's participation in that case. However, the *Meyer* court found that the defendant in *Lovell* actively participated in the defense of the action on its merits. Although evidence of this appears nowhere in the *Lovell* opinion, we believe that this is the only kind of activity which can amount to a full and voluntary participation in the litigation and a concomitant waiver of the Rule 103(b) objection under *Lovell*. In the instant case there is no evidence that Masters' participation in the Daily-Mac Farlane litigation was for any purpose other than for discovering if there were grounds for filing a motion to dismiss under Rule 103(b). Indeed

704

apparently Masters' appearance at Charlene Mac Farlane's deposition was not motivated by a desire to obtain information that could be used in a defense on the merits, but was rather for the purpose of ascertaining whether a Rule 103(b) objection would be proper. We see no justice in penalizing a defendant through the finding of a waiver in a case such as this where the defendant's minimal activities prior to the filing of a motion to dismiss are not geared toward defending on the merits but instead are focused on determining the factual propriety of a Rule 103(b) objection. It is only where it is obvious that defendant's participation and utilization of available pretrial discovery procedures are in anticipation of a defense on the merits that the *Lovell* waiver rule should be applied. The defendant's activities in the instant case fall far short of the *Lovell* state of involvement. For this reason we hold that defendant's delay and minimal participation did not result in a waiver of the Rule 103(b) objection.

The judgment of the Circuit Court of Will County is affirmed.

Judgment affirmed.

ALLOY and SCOTT, JJ., concur.