SYLVIA MUSKAT, Plaintiff-Appellant, v. PAUL STERNBERG *et al.*,
Defendants-Appellees (Robert Block *et al.*, Defendants).

First District (1st Division)   No. 1—89—0327

Opinion filed March 28, 1991.—Rehearing denied April 30, 1991.

Harold A. Liebenson and Norbert N. Rosenthal & Associates, Ltd., both of Chicago (Paula Brooks Tarr and Norbert N. Rosenthal, of counsel), for appellant.

Johnson, Cusack & Bell, Ltd., of Chicago (Thomas H. Fegan, Brian C. Fetzer, and Emilio E. Machado, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Sylvia Muskat appeals from the trial court's order that dismissed her complaint with prejudice against Dr. Paul Sternberg and his professional corporation Paul Sternberg, M.D. S.C. (collectively referred to as the defendants) under Supreme Court Rule 103(b) (107 Ill. 2d R. 103(b)) for her failure to exercise reasonable diligence to obtain service of summons prior to the expiration of the applicable statute of limitations. Muskat contends that the trial court abused its discretion by dismissing her action with prejudice. For the reasons set forth below, we affirm.

Between July 23 and July 26, 1980, the defendants were allegedly involved in Muskat's cataract removal surgery. Almost two years after her surgery, on July 22, 1982, Muskat's attorney filed a complaint which alleged negligence and products liability against the defendants for injuries allegedly caused by the cataract removal surgery. Specifically, Muskat's complaint alleges that after July 24, 1980, the implanted lens became loose and descended into her eyeball; that between one to two months after her surgery, she visited at least three other physicians who told her that the implanted lens became loose and descended into her eyeball, which physicians each treated her eye; and that she suffered pain, diminished vision, and a serious threat that if the lens migrated further into her eye, she could lose her sight.

On July 23, 1984, more than two years after Muskat's complaint was filed, her action was dismissed for want of prosecution because

service of process was neither attempted nor obtained upon either of the defendants.

Another year passed before Muskat's attorney refiled her complaint on July 23, 1985, pursuant to section 13—217 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 13—217). Finally, between August 19 and October 25, 1985, the defendants were served with process in the refiled action. Service of process was obtained more than three years after the action was originally filed and more than five years after the alleged injury.

On December 5, 1985, the defendants' attorney filed a notice of motion, a motion to vacate technical defaults, an appearance, a jury demand, an answer to complaint, interrogatories and a request for production. Muskat did not answer the defendants' interrogatories, did not respond to the production request and was not required to do so because the response period had not yet expired.

Then, on December 20, 1985, 15 days later, the defendants filed their motion to dismiss Muskat's complaint pursuant to Supreme Court Rule 103(b) (107 Ill. 2d R. 103(b)) contending that Muskat failed to exercise reasonable diligence in effectuating service of process. Rule 103(b) states:

> "If the plaintiff fails to exercise reasonable diligence to obtain service prior to the expiration of the applicable statute of limitations, the action as a whole or as to any unserved defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice. In either case the dismissal may be made on the application of any defendant or on the court's own motion." (107 Ill. 2d R. 103(b).)

The trial court heard the motions to dismiss and denied them on the grounds that the appropriate time period by which to measure Muskat's diligence in obtaining service of process commences with the refiling of the lawsuit.

Subsequently, this court granted the defendants' joint application for interlocutory appeal under Supreme Court Rule 308 (107 Ill. 2d R. 308), and the following question was certified:

> "Whether, in a case in which the plaintiff's original lawsuit was dismissed for want of prosecution, and no Supreme Court Rule 103(b) motion was filed and no service of process was attempted or obtained in the original lawsuit, a trial court may consider any lack of reasonable diligence in obtaining service of

process in the original lawsuit in ruling on a Supreme Court Rule 103(b) motion in the refiled lawsuit."

We answered the certified question in the affirmative, reversed the trial court's denial of the Rule 103(b) motion to dismiss and remanded for further proceedings. (*Muskat v. Sternberg* (1986), 151 Ill. App. 3d 304, 502 N.E.2d 1099.) Thereafter, the Illinois Supreme Court granted Muskat's petition for leave to appeal, and the court affirmed our decision. *Muskat v. Sternberg* (1988), 122 Ill. 2d 41, 521 N.E.2d 932.

On remand from the supreme court, the defendants renewed their motions to dismiss pursuant to Supreme Court Rule 103(b) (107 Ill. 2d R. 103(b)) and Muskat filed her answer.

On October 11, 1988, the trial court heard the motions to dismiss. However, during the hearing, Muskat's attorney asked for leave to amend Muskat's complaint to include fraudulent concealment allegations against the defendants, contending that Sternberg "willfully and fraudulently concealed *** that it was imminent and necessary that [Muskat] be examined immediately after her release from the hospital because the *** intraocular lens [could] become dislodged and sink into [Muskat's] eyeball and irreparably injure her," that Sternberg "intentionally concealed his malpractice" and that on or about July 22, 1985, Muskat discovered her injury when a medical consultant advised her of the specific area in which any deviation from normal treatment might have occurred.

Ruling on the motion, the trial court stated that the defendants were made a party in the 1982 suit; that despite the "wall of silence," Muskat knew she had an action against the defendants; that she knew enough to file a suit; and that the fact that "the 1982 case was filed would indicate that the plaintiff had knowledge that she had been injured, and that injury was wrongfully caused, or I can't see how she could file the suit and name these *** parties." Accordingly, the trial court denied the motion to amend Muskat's complaint on the grounds that it would not address the problems raised by the Rule 103(b) motions to dismiss. Then, the court continued the hearing with respect to the Rule 103(b) motions to December 29, 1988.

At the December 29, 1988, hearing, Muskat's attorney argued a motion to reconsider the motion to file an amended complaint, which the trial court denied. Additionally, the trial court heard arguments with respect to the Rule 103(b) motions. After the court determined that there was not sufficient participation in discovery to amount to waiver, it dismissed Muskat's complaint against the defendants with prejudice. The court stated that "maybe someone has an action

against an attorney *** an attorney has no right to withhold service of summons until he can pinpoint who did what when he's named them in the first place."

Muskat appeals the Rule 103(b) dismissal with prejudice.

■ Muskat argues that the trial court abused its discretion by dismissing her complaint because the defendants waived any objection to Supreme Court Rule 103(b) by not filing motions for two to four months after being served, by answering her complaint and by filing interrogatories and a request for production. We disagree.

The defendants did not waive their objection of an unreasonable delay in obtaining service because they raised their Rule 103(b) in the initial stages of the litigation and did not actively participate in defending the action on its merits. (*Gatto v. Nelson* (1986), 142 Ill. App. 3d 284, 292, 492 N.E.2d 1.) The defendants timely raised their Rule 103(b) objection since they filed their motion merely two to four months after they were served with notice of the action. Similarly, in *Meyer v. Wardrop* (1976), 37 Ill. App. 3d 243, 345 N.E.2d 762, the appellate court determined that a Rule 103(b) objection was not waived even though defendant Wardrop filed his Rule 103(b) motion to dismiss more than 11 months after he was served and had filed an appearance. (*Meyer*, 37 Ill. App. 3d at 247.) Therefore, we cannot conclude that the defendants relinquished their right to raise a defense under Rule 103(b) on the grounds that two to four months had passed between the time they were served and the time they filed their motion to dismiss.

■ Furthermore, the defendants did not "actively" participate in defending the action on the merits simply by filing an appearance, an answer to Muskat's complaint, interrogatories and a request for production. (See *Gatto v. Nelson* (1986), 142 Ill. App. 3d 284, 292, 492 N.E.2d 1 (where the appellate court determined that third-party defendants had not waived their Rule 103(b) objections even though they filed their motion to dismiss plaintiff's action two months after they filed their appearance *and answer to the third-party action*, and four months before they were served by plaintiff).) The defendants never required Muskat to answer the interrogatories and to respond to the production request, and they neither answered interrogatories nor noticed or participated in any depositions. Therefore, the case at bar is distinguishable from *Lovell v. Hastings* (1973), 11 Ill. App. 3d 221, 296 N.E.2d 608, which Muskat cites as support for her contention that Sternberg waived his objection. In *Lovell*, there was a four-month delay from the filing of an appearance by the defendant to the filing of a motion to dismiss under Rule 103(b). However, during the

four-month delay, *the defendant in Lovell filed answers to interrogatories and took a deposition.* The *Lovell* court held that the delay, coupled with the "active participation" in the litigation, constituted a waiver of a Rule 103(b) objection.

■ Similarly, the plaintiff in *Daily v. Hartley* (1979), 77 Ill. App. 3d 697, 396 N.E.2d 586, contended that the *Lovell* waiver rule should apply because there was a five-month delay between defendant's first appearance and the filing of the motion to dismiss under Rule 103(b), and because defense counsel attended a discovery deposition and made three court appearances. The appellate court affirmed the trial court's determination that defendants had not waived their Rule 103(b) objections because "[t]he defendant's activities [fell] far short of the *Lovell* state of involvement."[1] (*Dailey*, 77 Ill. App. 3d at 704.) The appellate court stated that "[i]t is only where it is obvious that defendant's participation and utilization of available pretrial discovery procedures are in anticipation of a defense on the merits that the *Lovell* waiver rule should be applied." 77 Ill. App. 3d at 704.

Accordingly, we find that the trial court did not abuse its discretion in determining that the defendants did not waive their Rule 103(b) objection. The defendants' motion to dismiss was timely, and they did not actively participate in defending the action on its merits because Muskat did not answer their interrogatories or request for production, and because they neither answered interrogatories nor noticed or participated in any depositions.

■ Muskat argues that the trial court abused its discretion by determining that Muskat did not diligently serve the defendants because she served the defendants soon after her complaint was refiled. Muskat's argument is without merit. Those cases which review dismissals under Supreme Court Rule 103(b) consistently state that nothing is more critical to the judicial function than the administration of justice without delay and that reasonable diligence in the service of process, as required by Rule 103(b), is essential to rendering justice fairly and promptly. (*Muskat v. Sternberg* (1988), 122 Ill. 2d 41, 48, 521 N.E.2d 430; *Catlett v. Novak* (1987), 116 Ill. 2d 63, 70, 506 N.E.2d 586; *O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, 282, 492 N.E.2d 1322; *Reap v. Highland Park Hospital* (1988), 169 Ill. App. 3d 756, 758, 523 N.E.2d 1117.) The standard for determining "reasonable diligence" is an objective one, and the burden is upon

---

[1]The appellate court noted that defense counsel appeared at a deposition to ascertain whether a Rule 103(b) objection would be proper.

Muskat to show that she exercised reasonable diligence in her efforts to obtain service. (*Daily v. Hartley* (1979), 77 Ill. App. 3d 697, 701, 396 N.E.2d 586.) The trial court properly considered the circumstances regarding service of process on the original as well as the refiled complaints (*Catlett v. Novak* (1987), 116 Ill. 2d 63, 71, 506 N.E.2d 586), such as: (a) the length of time used to obtain service; (b) Muskat's activities; (c) Muskat's knowledge of Sternberg's location; (d) the ease with which Sternberg's location could have been ascertained; (e) whether Sternberg had actual knowledge of the pendency of the action; and (f) special circumstances which would affect Muskat's efforts. *North Cicero Dodge, Inc. v. Victoria Feed Co.* (1987), 151 Ill. App. 3d 860, 863, 503 N.E.2d 868.

■■ According to the Illinois Supreme Court in this case, the trial court acted within the scope of its discretion when it considered the length of time from the initial filing of the complaint and the ultimate service of process in the refiled case. (*Muskat v. Sternberg* (1988), 122 Ill. 2d 41, 521 N.E.2d 932.) The defendants were served more than three years after the action was originally filed and more than five years after the alleged injury. " 'Refiling under section 13—217 does not insulate the plaintiff from the lack of diligence displayed prior to the dismissal.' " *Reap v. Highland Park Hospital*, 169 Ill. App. 3d 756, 758, 523 N.E.2d 1117, quoting *Muskat*, 122 Ill. 2d at 49.

Nevertheless, Muskat argues that the trial court abused its discretion because the defendants were promptly served after her complaint was refiled, contending that such diligence should outweigh any lack of diligence prior to refiling her complaint. This contention is without merit. The same argument was made and rejected by this court in *Reap v. Highland Park Hospital* (1988), 169 Ill. App. 3d 756, 523 N.E.2d 1117. The *Reap* court concluded that the supreme court's opinion in *Muskat v. Sternberg* (1988), 122 Ill. 2d 41, 521 N.E.2d 932, was dispositive on this issue and affirmed the dismissal of plaintiff Reap's refiled complaint with prejudice. In *Reap*, the plaintiff's medical malpractice action was filed on the eve that the applicable statute of limitations expired. During the next 10 months, the action was dismissed twice for want of prosecution. Throughout such time, the plaintiff did not attempt or obtain service of process. Subsequently, plaintiff Reap refiled his action pursuant to section 13—217 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 13—217), and the defendants were served promptly in the refiled action. Defendants moved to dismiss under Rule 103(b), and the trial court dismissed the refiled complaint with prejudice. (*Reap v. Highland Park Hospital* (1988), 169 Ill. App. 3d 756, 758, 523 N.E.2d 1117.)

Accordingly, the prompt service in Muskat's refiled action does not outweigh the fact that Muskat's attorney neither attempted nor obtained service in the original action.

Additionally, Muskat argues that "searching for a medical expert," the defendants' "refusal to answer questions" and "the medical community's unresponsiveness and stonewalling" constitute "special circumstances" affecting her efforts to effect service. We disagree. After filing Muskat's complaint, which alleges that Muskat knew she had been injured and believed that it was wrongfully caused, Muskat's attorney searched for a medical expert who could explain and corroborate any negligent conduct. Muskat's attorney does not explain why a medical expert was necessary to obtain service of process. If Muskat's attorney was actually concerned with corroborating any alleged malpractice and making those allegations in good faith, as Muskat's attorney argues, it seems that the time to inquire with an expert is before the case is filed or, alternatively, after obtaining service of process and during the pretrial period, rather than after filing the complaint and before *attempting* to obtain service of process.

While Muskat's attorney may have been correct that he could not go forward in a trial without being able to explain the alleged malpractice, delaying service of process is not the appropriate means to dispose of an action if the attorney believes that he cannot persuade the trier of fact of malpractice. Delaying service of process is clearly unjust to the defendants because without service they were not put on notice that a lawsuit was pending. Consequently, the defendants did not have an opportunity to question occurrence witnesses or to investigate the relevant facts in close proximity to the alleged action. Moreover, at the time Muskat filed her complaint, she was not required pursuant to section 2—622 to file an affidavit stating that a physician had concluded in a written report that "there is a reasonable and meritorious cause." (Ill. Rev. Stat. 1987, ch. 110, par. 2—622(a)(1).) In short, the inability to find a corroborating expert is no excuse for failure to promptly obtain service of process on a defendant.

For the reasons stated above, the trial court acted within the scope of its discretion when it determined that Muskat did not diligently serve the defendants.

Muskat argues next that the trial court abused its discretion by denying her motion to amend her complaint to include fraudulent concealment allegations. She contends that her action falls within the fraudulent concealment exception to the statute of limitations set forth in section 13—215 of the Limitations Act (Ill. Rev. Stat. 1987,

ch. 110, par. 13—215, previously codified in Ill. Rev. Stat. 1979, ch. 83, par. 23) and that, consequently, her complaint should not have been dismissed with prejudice. We are not persuaded by Muskat's argument and her attempt to extend the statute of limitations period so that the dismissal with prejudice is avoided.

While, generally, a plaintiff is permitted to amend her complaint before final judgment (Ill. Rev. Stat. 1987, ch. 110, par. 2—616), the trial court did not abuse its discretion by denying Muskat's motion because a fraudulent concealment theory was simply not ·supported by facts Muskat alleged in her refiled complaint. Section 13—215 provides:

> "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." (Ill. Rev. Stat. 1987, ch. 110, par. 13—215.)

By its terms, section 13—215 applies only to fraudulent concealment cases where a party is unwittingly induced not to file his action until after expiration of the limitations period. (*Sharpe v. Jackson Park Hospital* (1981), 99 Ill. App. 3d 874, 877, 425 N.E.2d 1244, *aff'd* (1982), 92 Ill. 2d 232, 441 N.E.2d 645.) "If at the time the plaintiff discovers the 'fraudulent concealment' a reasonable time remains within the applicable statute of limitations, section [13—215] of the Limitations Act does not toll the running of the limitation period." (*Anderson v. Wagner* (1979), 79 Ill. 2d 295, 322, 402 N.E.2d 560.) This rule is logical because once a party discovers the fraud, it is no longer concealed, and if time remains within which to file the action, section 13—215 cannot operate to toll the limitations period. (*Sharpe*, 99 Ill. App. 3d at 877.) Consequently, Muskat could not sustain a fraudulent concealment action because the alleged malpractice was discovered when she allegedly experienced pain and learned from other physicians between August and September of 1980 that the lens had migrated from her eye. Therefore, Muskat discovered her alleged action long before the two-year statute of limitations period expired (Ill. Rev. Stat. 1987, ch. 110, par. 13—212) and had ample time to file her original complaint within the limitations period. Accordingly, the trial court acted within the scope of its discretion when it denied Muskat's motion to amend her complaint to include allegations of fraudulent concealment.

Muskat also argues that the trial court abused its discretion by dismissing her complaint with prejudice, contending that her law-

suit was governed by the five-year statute of limitations because her action was fraudulently concealed and that service was obtained before five years had elapsed. We disagree. A fraudulent concealment theory is simply not supported by the facts Muskat alleged. (See discussion above.) Consequently, the trial court did not abuse its discretion when it dismissed Muskat's complaint with prejudice pursuant to Rule 103(b) because her lack of diligence occurred after the expiration of the applicable statute of limitations period, *i.e.*, two years from the time she knew or should have known of the existence of the injury. Ill. Rev. Stat. 1987, ch. 110, par. 13—212.

Based upon the foregoing, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.