DIANA MARKS, Plaintiff-Appellant, v. RUEBEN H. DONNELLEY, INC., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—92—0814

Opinion filed March 31, 1994.

Jeffrey D. Hupert and Edward Salomon, both of Chicago, for appellant.

Michael J. Nykaza, of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

## NATURE OF THE CASE

Plaintiff, Diana Marks, filed a complaint on August 18, 1989, in the circuit court of Cook County against defendants, Angelina Pinela and Rueben H. Donnelley, Inc. The complaint sought damages for personal injuries allegedly sustained as a result of the negligence of defendant, Angelina Pinela, an employee of defendant, Rueben H. Donnelley, Inc. (Donnelley). Plaintiff appeals from the trial court's order of February 11, 1992, granting Donnelley's motion to dismiss for failure to exercise reasonable diligence to obtain service.

FACTS

The complaint alleges that plaintiff was injured on August 22, 1987, when she stepped out of her house and fell on telephone directories after defendant, Angelina Pinela, an employee of defendant Donnelley, rang her doorbell and left the directories in the doorway. The complaint, filed on August 18, 1989, shortly before the expiration of the two-year statute of limitations period, alleges negligence against defendant Pinela and seeks recovery against defendant Donnelley under the theories of *respondeat superior* and negligent supervision. No summons was issued for either defendant at the time the complaint was filed.

On February 21, 1990, the action was dismissed for want of prosecution when plaintiff failed to appear at a progress call set before the trial judge. Within 30 days thereafter, plaintiff filed a motion to vacate the dismissal. The record shows that notice of this motion was mailed on March 23, 1990, to Julie Haick, a claims adjuster for defendant's insurer, Hartford Insurance Company (hereinafter Hartford). However, plaintiff did not notice the motion for hearing until May 27, 1991, when such notice was delivered to defendant's attorney. On June 4, 1991, the court vacated the dismissal and ordered that alias summonses be issued to both defendants. The record discloses that Ms. Pinela was served with summons on June 28, 1991. The record also reflects a motion by plaintiff for voluntary dismissal as to defendant Pinela only. Apparently that motion was granted, although there is no such clear indication in the record. In any event, defendant Pinela is not involved in this appeal.

Defendant Donnelley was not served with summons until August 27, 1991. Thereafter, on September 18, 1991, Donnelley filed a motion to dismiss under Supreme Court Rule 103(b) (134 Ill. 2d R. 103(b)), for lack of diligence in obtaining service of process. Affidavits in opposition to said motion were filed by plaintiff's attorneys, Edward Salomon and Jeffrey D. Hupert. With its reply, defendant filed the affidavits of Hartford employees Thomas Thoma and Julie Haick (hereinafter Thoma and Haick). A hearing on the motion took place on February 11, 1992.

The affidavit of plaintiff's attorney, Edward Salomon (hereinafter Salomon), states that he mailed an "attorney's lien notice" to defendant Donnelley in September 1987, shortly after the occurrence. Subsequently, he received a letter from Shirleen Shubert on behalf of Hartford, stating that Hartford was Donnelley's insurer and would defend it in this matter. Salomon's affidavit states, "Between October 1987 and August 1989 I spoke to Ms. Shurbert [*sic*] and then Mr. Thomas Toma [*sic*] of The Hartford on a few occasions regarding settlement of this matter." Salomon also stated:

"Prior to filing a complaint within the statutory period, I spoke with Mr. Toma [*sic*] about resolving the matter without litigation. He told me that although The Hartford wanted to settle the matter, that I should go ahead and file a complaint and send a copy directly to him without serving it through the sheriff's office. He indicated that mailing the complaint to him would constitute formal service on Donnelley. He said we could then actively discuss settlement."

Salomon further averred that on August 19, 1989, the day after the complaint was filed, he sent a copy of the complaint to Thoma along with a letter (hereinafter the August 19, 1989, letter) which was referenced "Marks v. Rueben Donnelley" and which stated in pertinent part: "Per our agreement, this transmittal will constitute acceptance of service for the defendant and you will be calling to discuss resolution of this claim." The letter also contained a telephone number where Salomon could be reached.

Thoma's affidavit stated that he never spoke with Salomon until August 15, 1989, at which time Salomon said that he would mail to him a courtesy copy of the complaint which he was about to file along with an itemization of plaintiff's "specials." Thoma's affidavit denied that he received the August 19, 1989, letter and any of its alleged enclosures. He also denied agreeing that Hartford's receipt of the complaint would be acceptable in lieu of formal service of summons on Donnelley. Thoma averred that, after two unsuccessful attempts to contact Salomon by telephone, he closed his file on the matter on November 14, 1989, and that he had no contact whatsoever with Salomon other than that single telephone conversation on August 15, 1989.

The affidavit of Hartford claims adjuster Julie Haick denied receipt of any notices or other correspondence during March 1990. The only conversation she had with Salomon was during a January 14, 1991, telephone call from him, expressing an interest in settlement negotiations. According to her affidavit, Haick told Salomon that she would not discuss settlement until she verified that a complaint had been filed and that the insured had been served. Haick stated that she first received a copy of the complaint from Salomon on February 13, 1991. Although Salomon had indicated on January 14, 1991, that he would contact Haick again, he never did.

The affidavit of Jeffrey D. Hupert, additional counsel for plaintiff, states that a second action was filed in 1991 based on the same events and that defendant Donnelley was served in connection with that action. Mr. Hupert avers that he spoke with William Lacy, Donnelley's attorney in May 1991, at which time Mr. Lacy indicated he

was aware of the first suit. It is undisputed that the second suit was voluntarily dismissed after the DWP was vacated in the first suit.

At the hearing on the Rule 103(b) motion, the trial court granted Donnelley's Rule 103(b) motion to dismiss with prejudice, finding that plaintiff had not exercised reasonable diligence in obtaining service upon defendant Donnelley. At that hearing the court found that the August 19, 1989, letter was sent and received, but made no finding that any agreement was reached to obviate formal service of summons. Plaintiff appeals from the trial court's order granting Donnelley's motion.

OPINION

On appeal, plaintiff takes the position that the trial court abused its discretion in dismissing this cause pursuant to a Rule 103(b) motion. First, plaintiff contends that receipt of the August 19, 1989, letter from her attorney to Donnelley's insurer constitutes a special circumstance which should excuse plaintiff's failure to promptly obtain formal service on Donnelley. Alternatively, plaintiff contends that, even if the letter is not sufficient when considered alone, the pattern of communications between Donnelley's insurer and plaintiff's attorney, in combination with the receipt of the letter, constitutes special circumstances sufficient to excuse the failure to obtain prompt formal service. Plaintiff also contends that the court should find a special circumstance in the fact that defendant would be unjustly enriched if plaintiff's failure to effect prompt service was attributable to defendant's misleading conduct. Finally, plaintiff contends that Donnelley is estopped from claiming that proper service was not timely effected.

Supreme Court Rule 103(b) provides:

"If the plaintiff fails to exercise reasonable diligence to obtain service prior to the expiration of the applicable statute of limitations, the action as a whole or as to any unserved defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice. In either case the dismissal may be made on the application of any defendant or on the court's own motion." 134 Ill. 2d R. 103(b).

The purpose of Rule 103(b) is to provide for expeditious handling of suits by protecting defendants from unnecessary delays in service of process and by preventing plaintiffs from circumventing the statute of limitations, which seeks to give defendants the opportunity to investigate the circumstances of the case while evi-

dence is still accessible. (*Segal v. Sacco* (1990), 136 Ill. 2d 282, 285-86, 555 N.E.2d 719; *Green v. Wilmot Mountain, Inc.* (1980), 92 Ill. App. 3d 176, 181, 415 N.E.2d 1076.) To this end, the trial court is given wide discretion to dismiss a suit under Rule 103(b) where a plaintiff fails to exercise reasonable diligence in obtaining service. (*Segal*, 136 Ill. 2d at 285.) The trial court's ruling on such a motion will not be disturbed on appeal absent an abuse of discretion. *Zincoris v. Hobart Brothers Co.* (1993), 243 Ill. App. 3d 609, 616, 611 N.E.2d 1327.

■ Rule 103(b) "is not based upon the subjective test of plaintiff's intent but, rather, upon the objective test of reasonable diligence in effecting service." (*Parker v. Universal Packaging Corp.* (1990), 200 Ill. App. 3d 882, 886, 558 N.E.2d 203.) The burden is on the plaintiff to demonstrate that reasonable diligence in effecting service was exercised. (*Segal*, 136 Ill. 2d at 286; *Connaughton v. Burke* (1977), 46 Ill. App. 3d 602, 605, 361 N.E.2d 87.) In evaluating whether a plaintiff has demonstrated reasonable diligence, there is no set time limit during which service must be effected. (*Parker*, 200 Ill. App. 3d at 886.) The determination is based on the facts and circumstances in each particular case. (*Zincoris*, 243 Ill. App. 3d at 616.) The Illinois Supreme Court, in *Segal*, collated and endorsed the consideration of seven factors (hereinafter the *Segal* factors) previously applied in various appellate decisions. The court wrote:

> "Different factors which a court may consider in determining whether to allow or deny a Rule 103(b) motion include, but are not limited to, (1) the length of time used to obtain service of process; (2) the activities of plaintiff; (3) plaintiff's knowledge of defendant's location; (4) the ease with which defendant's whereabouts could have been ascertained; (5) actual knowledge on the part of the defendant of pendency of the action as a result of ineffective service; (6) special circumstances which would affect plaintiff's efforts; and (7) actual service on defendant. (See *Wallace v. Smith* (1979), 75 Ill. App. 3d 739; *Connaughton v. Burke* (1977), 46 Ill. App. 3d 602.) These factors must be considered in light of the purpose of Rule 103(b)." *Segal*, 136 Ill. 2d at 287.

See also *Segal v. Sacco* (1988), 175 Ill. App. 3d 504, 506, 529 N.E.2d 1038, *aff'd* (1990), 136 Ill. 2d 282, 555 N.E.2d 719; *Kappel v. Errera* (1987), 164 Ill. App. 3d 673, 679, 518 N.E.2d 226; *Alsobrook v. Cote* (1971), 133 Ill. App. 2d 261, 264, 273 N.E.2d 270.

Plaintiff concedes that the first four *Segal* factors weigh in defendant's favor. Regarding the fifth factor, plaintiff contends that Donnelley had actual knowledge of the suit. Although Donnelley denies such knowledge, the trial court's finding that the August 19, 1989, letter was received by Hartford would substantiate that at least

Donnelley's carrier knew of the suit. However, assuming that plaintiff is correct as to Donnelley's knowledge of the suit, plaintiff admits that such knowledge alone is insufficient to establish plaintiff's exercise of reasonable diligence. *Karpiel v. La Salle National Bank* (1970), 119 Ill. App. 2d 157, 161-62, 255 N.E.2d 61 (defendant's timely knowledge of nature of suit is merely one factor to consider and will not preclude trial court's finding that plaintiff failed to exercise reasonable diligence).

Moreover, it is relatively clear that even the combination of defendant's timely knowledge of the suit and the ultimate service of process, as occurred in this case, would not suffice, without more, to demonstrate reasonable diligence. See *Womick v. Jackson County Nursing Home* (1990), 137 Ill. 2d 371, 376-77, 561 N.E.2d 25 (upholding trial court's finding that plaintiff had not exercised reasonable diligence although defendant nursing home, served with summons nine months after the statute of limitations period, had actual knowledge of the suit immediately following the incident giving rise to the suit).

Thus, plaintiff's contention that she exercised reasonable diligence in obtaining service rests on whether there is some special circumstance which would otherwise justify the delay in effecting service. Plaintiff contends that the letter of August 19, 1989, sent to Thoma at Hartford constitutes such a special circumstance, particularly when combined with the course of conduct between the parties as alleged in the Salomon affidavit. As mentioned earlier, the letter referenced "Marks v. Rueben Donnelley" referred to an alleged prior agreement that receipt of that letter by Hartford would constitute acceptance of service on defendant's behalf and that no formal service would be necessary. Plaintiff correctly urges that the parties by contract can designate how service shall be effected. See *National Equipment Rental, Ltd. v. Szukhent* (1964), 375 U.S. 311, 316, 11 L. Ed. 2d 354, 358, 84 S. Ct. 411, 414 ("parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether"); *National Equipment Rental, Ltd. v. Polyphasic Health Systems, Inc.* (1986), 141 Ill. App. 3d 343, 347, 490 N.E.2d 42 (upholding provision in contract providing for service by registered mail to party's address shown in contract). We note, however, that the affidavits submitted to the trial court were contradictory on the issue of whether an agreement to forego formal service was actually reached. While the trial court made a finding that the August 19, 1989, letter was sent and received, its finding did not purport to determine that the representation in that letter concerning any prior agreement as to acceptance of summons was true or that the repre-

sentation was otherwise adopted or conceded by the recipient. Moreover, we agree with defendant's further argument that, even if such an agreement would have been made between Thoma and plaintiff's attorney, it would not have bound Donnelley since there was no showing that the insurer had actual authority to accept service for the insured. See *Isaacs v. Shoreland Hotel* (1963), 40 Ill. App. 2d 108, 115, 188 N.E.2d 776 ("The Civil Practice Act does not provide that notice of suit to an insurer is service of process on the insured"); see also *Slates v. International House of Pancakes, Inc.* (1980), 90 Ill. App. 3d 716, 728, 413 N.E.2d 457.

Plaintiff contends, however, that even if no legally enforceable agreement existed, the letter, either alone or in combination with the course of conduct of the parties, constitutes a "special circumstance" which will excuse the delay in effecting formal service. In this regard plaintiff contends that her attorney was lulled into believing that Hartford conceded the existence of the agreement referred to in the August 19, 1989, letter to obviate formal service of summons. Plaintiff relies on the fact that Hartford never contacted Salomon to contest or deny the existence of such an agreement.

Plaintiff further argues that the pattern of negotiations between her attorney and Donnelley's insurer also supports plaintiff's conclusion that formal service was unnecessary. Salomon's affidavit alleges subsequent conversations during February and March of 1990 with Thoma and Haick of Hartford regarding settlement, although both Thoma and Haick denied that any conversations took place.

The weight to be given to a "special circumstance" in relation to the other six *Segal* factors which must be considered depends on the particular facts in each case. (See, *e.g., Martin v. Lozada* (1974), 23 Ill. App. 3d 8, 318 N.E.2d 334.) There, the plaintiff claimed that the unfulfilled promise of defendant's attorney to forward copies of tax returns and contact plaintiff's attorney was intended to delude plaintiff into believing service had been effected. The review court found that the trial court, in balancing this factor against the other factors to be considered, did not abuse its discretion in dismissing the action for failure to exercise reasonable diligence. See also *Parker v. Piskur* (1994), 258 Ill. App. 3d 344, 347 (special circumstance of misfiling client documents in attorney's files not sufficient to justify failure to attempt service of summons until 18 months after the complaint was filed); *Gatto v. Nelson* (1986), 142 Ill. App. 3d 284, 291, 492 N.E.2d 1 (claim that delay was caused by defendant going into hiding was not sufficiently authenticated to justify delay in service); *Daily v. Hartley* (1979), 77 Ill. App. 3d 697, 701, 396 N.E.2d 586 (plaintiff's mistaken belief as to the spelling of defendant's name not sufficient

to justify delay in service where error could have been easily ascertained); *Sullivan v. Nissen Trampoline Co.* (1967), 82 Ill. App. 2d 1, 5, 226 N.E.2d 649 (settlement negotiations ending six months before filing of suit not sufficient to have induced a plaintiff to forego service of process).

■ Although the trial court found that the letter of August 19, 1989, was sent and received, that finding is not dispositive since it did not purport to validate the truth of the representations contained in that letter. As we have noted, while plaintiff's attorney, Salomon, asserted in his affidavit that he believed there was an agreement that the informal service described in the August 19, 1989, letter would suffice, Thoma denied that any such agreement ever existed. No other evidence of such an agreement was presented. Furthermore, although Salomon relies on the fact that Thoma did not contact him to clarify that no such agreement existed, Thoma stated that his attempts to contact Salomon shortly after August 19, 1989, were unsuccessful. Moreover, Salomon has not established that Thoma was under any duty to negate any gratuitous assertions as to the existence of an agreement, particularly if the trial court were to believe that there was no established course of dealing between the parties from which such a duty would be inferable. See 17 C.J.S. *Contracts* § 41 (1963) (Unless the relationship of the parties or their previous dealings is such as to impose a duty to speak, no such duty exists, particularly where silence or inaction has uncertain meaning and parties reasonably differ as to what is meant); *cf. Lundin v. Egyptian Construction Co.* (1975), 29 Ill. App. 3d 1060, 1064, 331 N.E.2d 208 (course of conduct may act as consent to agreement only where it is clear exactly what the agreement is and that the conduct is related to that agreement).

Although plaintiff contends that there were subsequent conversations with defendant's insurer, the affidavits of the two Hartford employees deny any such contact, except for one telephone call on January 14, 1991. Thus, notwithstanding the fact that the August 19, 1989, letter was found to have been sent, its weight as a special circumstance is tenuous, given that its underlying representations were vigorously disputed. Its impact as a special circumstance must, therefore, be balanced against the other *Segal* factors. See *Segal*, 136 Ill. 2d at 287; *Martin*, 23 Ill. App. 3d at 12.

In plaintiff's favor, we have the fact that a summons was ultimately served (the seventh factor). As previously pointed out, it is also probable, although not certain, that through its insurer Donnelley had actual knowledge of the suit (the fifth factor).

■ However, in defendant's favor, we note that service was not

effected until August 27, 1991, for Donnelley, roughly two years after the expiration of the statute of limitations and the filing of the complaint, and more than four years after the incident giving rise to the lawsuit (the first factor). Addressing the activities of the plaintiff (the second factor), we point out that during that time, plaintiff made no attempt at formal service and no attempt to assure himself that defendant, through Thoma, had received the complaint and accepted service by the informal method attempted. It is also undisputed that during this period plaintiff allowed her case to be dismissed for want of prosecution and waited over a year before noticing for hearing the motion to vacate the DWP. While plaintiff's attorney claims to have had settlement discussions on but "a few occasions," defendant, through its affiants, has denied that such discussions occurred. "A party to a lawsuit has a nondelegable duty to take all necessary steps to bring his case to a prompt conclusion." (*Zincoris*, 243 Ill. App. 3d at 617.) Moreover, plaintiff at all times knew Donnelley's whereabouts (the third factor), having initially directed the attorney's lien to Donnelley shortly after the accident. Even if that were not the case, Donnelley, being a large corporation would have been easy to locate and service could have easily been accomplished through an officer or through Donnelley's registered agent (the fourth factor). Accordingly, we conclude that the trial court did not abuse its discretion in determining that plaintiff had not met the burden of showing reasonable diligence in obtaining service. See *Martin*, 23 Ill. App. 3d at 11-12; *Sullivan*, 82 Ill. App. 2d at 5.

Contrary to plaintiff's contention, the foregoing conclusion should not be altered by consideration of quasi-contract principles regarding the doctrine of unjust enrichment. Under quasi-contract principles, a person who receives a benefit from another is required to pay for that benefit if, under the circumstances, it is unjust to retain the benefit. *Board of Directors of Carriage Way Property Owners Association v. Western National Bank* (1985), 139 Ill. App. 3d 542, 547-48, 487 N.E.2d 974.

■ Here, as previously pointed out, the factual underpinnings as to whether there was any understanding or any course of settlement negotiations have been fully disputed. Moreover, the circumstances in this case are no different from those present in any other case where plaintiff would claim as an excuse for delayed service that he was lulled by the conduct of the defendant. The allegation of unjust enrichment in this case would, therefore, be subsumed within the "special circumstance" analysis in similar cases involving the contention that plaintiff was lulled into inaction. (See, *e.g.*, *Martin*, 23 Ill. App. 3d at 12; *Sullivan*, 82 Ill. App. 2d at 5. See generally

*Segal,* 136 Ill. 2d at 287.) Finally, the concept of unjust enrichment is wholly inappropriate to the facts of this case since plaintiff does not profess the performance of any gratuitous service for defendant. She does not claim, for an example, that she agreed to abstain from filing suit which would have arguably conferred a benefit upon defendant. Quite to the contrary, she claims that defendant agreed to confer a benefit upon her by allegedly submitting to jurisdiction without necessitating formal service of summons, so long as it received a copy of the complaint by mail. This does not constitute a service to the defendant which "it is unjust for [it] to retain." See *Board of Directors of Carriage Way Property Owners Association,* 139 Ill. App. 3d at 548.

There is no greater merit to plaintiff's last contention that Donnelley is estopped from seeking dismissal by reason of plaintiff's failure to exercise reasonable diligence. For words or conduct to constitute an estoppel, they must amount to "a misrepresentation or concealment of material facts." (*Lowenberg v. Booth* (1928), 330 Ill. 548, 555-56, 162 N.E. 191.) The party asserting the estoppel has the burden of proving it. This burden must be met by "clear, precise and unequivocal evidence." *Joliet Mass Transit District v. Illinois Fair Employment Practices Comm'n* (1980), 85 Ill. App. 3d 270, 273, 407 N.E.2d 80; *Allstate Insurance Co. v. National Tea Co.* (1975), 25 Ill. App. 3d 449, 462, 323 N.E.2d 521.

■ The conduct of defendant upon which plaintiff predicates his estoppel argument is the failure of Thoma to affirmatively notify plaintiff's attorney that he did not acquiesce in the assertion contained in the August 19, 1989, letter that there was an agreement to accept that letter in lieu of formal service. Plaintiff contends that Thoma's silence on this issue amounts to concealment of a material fact, namely, that no service had been effected. Plaintiff states in her brief that these facts obviously "fit within the prototypical estoppel situation." We disagree. We note, first of all, that equitable estoppel cannot be based on a party's silence unless that party had an affirmative duty to speak. (*Joliet Mass Transit District,* 85 Ill. App. 3d at 273; *Lowenberg,* 330 Ill. at 556.) This duty may arise where there is a special relationship between the parties. See, *e.g., Reiss v. Hanchett* (1892), 141 Ill. 419, 427, 31 N.E. 105 (trustee of goods had duty to speak when those goods were wrongfully repossessed because they were intermingled with another person's goods). See also *Shockley v. Ryder Truck Rental, Inc.* (1979), 74 Ill. App. 3d 89, 96, 392 N.E.2d 675.

Based upon the tenuous submissions presented by plaintiff and the countersubmissions of defendant, the trial court was not required to conclude that there was a special relationship between the parties

which would impose a duty upon defendant to speak. First the court need not have found that there was any course of dealing between the parties from which consent to the alleged agreement could be inferred or which would impose a duty on defendant to respond to Salomon's letter. Nor was there anything in the nature of the relationship between a tort claimant and a defendant and its carrier to impose any burden on defendant or its carrier to come forward. (See 17 C.J.S. *Contracts* § 41 (1963) ("silence alone does not give consent, even by estoppel, since there must not only be the right, but the duty, to speak"; "it is otherwise if the relationship of the parties, their previous dealings, or other circumstances are such as to impose a duty"); *cf. Lundin*, 29 Ill. App. 3d at 1064.) Consequently, one cannot transform defendant's silence in the present case into an affirmative misrepresentation. See *Joliet Mass Transit District*, 85 Ill. App. 3d at 274 (Defendant's attorney indicated he would consult his client about a possible extension of time for filing the complaint and then contact plaintiff's attorney. The court ruled that the defendant's attorney had no duty to contact the plaintiff's attorney after the report was received).

Finally, plaintiff asks that she not be denied her right to a determination on the merits because of the negligence of her attorney. She relies on *Cohen v. Wood Brothers Steel Stamping Co.* (1991), 227 Ill. App. 3d 354, 592 N.E.2d 59, in asking that the reasonable diligence requirement be relaxed in the interests of fairness. In *Cohen*, the plaintiff appealed denial of his petition under section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401) to vacate an order of dismissal. The plaintiff in that case argued that the trial court should not have applied a strict test for the exercise of due diligence required under section 2—1401. (*Cohen*, 227 Ill. App. 3d at 357-58.) In reversing the trial court's denial of the section 2—1401 petition, this court noted the existence of two lines of cases under section 2—1401, one favoring application of a strict due diligence standard, and the other favoring a more relaxed standard in the interests of justice and fairness. *Cohen*, 227 Ill. App. 3d at 360.

■ The conclusion reached in the *Cohen* case does not extend by analogy or otherwise to the interpretation of the reasonable diligence standard under Rule 103(b) in the present case. We have discerned no divergence in the Rule 103(b) cases such as the two lines of cases on section 2—1401 petitions. Moreover, the facts in *Cohen* did not involve a case of ordinary neglect as does this case, but, as we noted in *Cohen*, they involved "an extraordinary situation where a young attorney abruptly and unexplicably abandoned both his client and his law firm without attending court and without adequately

documenting the files for which he retained responsibility." (*Cohen*, 227 Ill. App. 3d at 360.) In doing so, the attorney defaulted in his repeated opportunities to prove up damages in a case which he had already won on the liability issue. We concluded in *Cohen*, "To charge a plaintiff with the harsh results of such aberrant and unanticipated conduct on the part of his attorney would be a mockery of the demands of substantial justice." (*Cohen*, 227 Ill. App. 3d at 360.) These circumstances are neither similar nor analogous to the conduct of counsel in the case at bar.

For the foregoing reasons, the judgment of the circuit court of Cook County granting defendant's Rule 103(b) motion to dismiss is affirmed.

Affirmed.

MURRAY, P.J., and McNULTY, J., concur.